452 So.2d 1167 (1984)
PAN AMERICAN IMPORT CO., INC.
v.
Katherine Hebert, Wife of/and Julius K. BUCK, Janet Buck, Wife of/and Jerry Verrette.
No. 83-C-2558.
Supreme Court of Louisiana.
June 25, 1984.
Patrick C. Kelley, New Orleans, for applicant.
*1168 Mitchell J. Hoffman, Ann Wise, McCloskey, Dennery, Page & Hennesy, New Orleans, La., for respondents.
MARCUS, Justice.
Pan American Import Co., Inc. (Pan Am) employed Janet Buck from June 1976 until August 1977 when she was fired for embezzling $61,374.62 from the company. Pan Am was reimbursed $25,000 from its bonding company and recovered $7,681.68 from customers. To recover the balance of $28,692.94, Pan Am filed suit in June 1978 against Janet Buck and her live-in boyfriend Jerry Verrette.[1] Janet and Jerry were subsequently married on November 16, 1978. In March 1981, the trial judge granted Pan Am's motion for summary judgment against Janet Verrette for $26,142.94. Janet Verrette did not appeal the summary judgment and it became executory in May 1981. Pan Am immediately instituted garnishment proceedings against Jerry Verrette's salary to collect on the judgment. Jerry Verrette filed a petition to enjoin the garnishment and to recover damages for wrongful garnishment. The trial judge refused to grant injunctive relief, but did order the garnished funds placed in escrow until the suit between Pan Am and Jerry Verrette was resolved.
In July 1981, Jerry Verrette petitioned the court for a judicial separation of property pursuant to La.Civ.Code art. 2374,[2] alleging that his interest in the community regime between Janet and him was threatened to be diminished due to the fault, neglect and/or incompetence of Janet and by the disorder of Janet's affairs. Pursuant to La.Civ.Code art. 2376,[3] Pan Am intervened in the suit, objecting to the separation of property on the ground that the separation would be in fraud of its rights. This case was consolidated for trial with the earlier suit by Pan Am still pending against Jerry Verrette.[4]
After a trial on the merits, the trial judge dismissed Pan Am's suit against Jerry Verrette for recovery of the money Janet embezzled from the company. In the second case, the judge rendered judgment in favor of Jerry Verrette granting him a separation of property retroactive to July 10, 1981, the date of filing. He held that "[t]here is nothing fraudulent about Verrett [sic] trying to shield his income from a pre-nuptial creditor of his wife. There is utterly no deceit involved. He is attempting to exercise a right conferred by the Code which inevitably is prejudicial to the creditors of the spendthrift spouse."[5] The trial judge, however, denied Verrette any damages for wrongful garnishment because the seizure of his income as community property to satisfy a separate debt of his wife was valid when it was executed.
Pan Am appealed both judgments of the trial court.[6] The court of appeal affirmed *1169 the trial judge's dismissal of Pan Am's suit against Jerry Verrette seeking to hold him liable in solido with Janet for the amount she embezzled from Pan Am. However, the court of appeal reversed the trial judge's grant of a separation of the community regime between Jerry and Janet Verrette. The court found, under La.Civ. Code art. 2376, that the separation of property was "in fraud" of Pan Am's rights as a creditor because the separation terminated Pan Am's rights to garnish Jerry Verrette's salary. The court defined fraud as used in article 2376 as "synonymous with `bad faith'" and held that "when the sole purpose of a petition to separate community property is admittedly to avoid payment of a preexisting debt, we believe that the petitioners are in bad faith and that separation of the community will unfairly deprive creditors of their rights."[7]
On the application of Jerry and Janet Verrette, we granted certiorari solely to consider the issue of whether Jerry Verrette should have been granted a separation of property in this case.[8]
The question presented for our consideration is whether Jerry Verrette's separation of property under La.Civ.Code art. 2374 is "in fraud of" Pan Am's rights as a creditor, thereby enabling Pan Am to prevent the separation under La.Civ.Code art. 2376.
Articles 2374 and 2376 were added to the Code as part of the community property revision of 1979 and have never before been considered by this court. Although the articles are new, they have the effect of extending to both spouses and to their creditors rights that were previously only afforded to the wife as protection of her dowry and to the husband's creditors.[9] Article 2374 enables a spouse to obtain a judicial separation of property when his or her interest in the community "is threatened to be diminished by the fraud, fault, neglect, or incompetence of the other spouse, or by the disorder of the affairs of the other spouse." However, article 2376 permits the creditors of either spouse to intervene in the proceeding and object to the separation if it is "in fraud of their rights."
In this case, Jerry Verrette's interest in the community regime was clearly being threatened by Janet's fiscal mismanagement; thus, the requirements of article 2374 were met. Yet, the question remains whether his termination of the community regime, thereby removing from Pan Am's reach Jerry's salary under garnishment to satisfy Janet's debt, was "in fraud of" Pan Am's rights.
We cannot look to prior jurisprudence interpreting the phrase "in fraud of their rights" because no case has ever before considered the matter. However, we can consult the revocatory action articles in pari materia and by analogy consider the interpretation given fraud under those articles. The right of a creditor under article 2376 to object to a separation of property is akin to a revocatory action because the creditor in both actions is avoiding a transaction or proceeding made in fraud of his rights. Article 1969 expresses the general purpose behind the revocatory action: "every act done by a debtor with the intent of depriving his creditor of the eventual right *1170 he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided." Thus the law establishes the revocatory action, which is "an action to annul any contract made in fraud of [creditors'] rights." La.Civ.Code art. 1970. The meaning of "fraud" as used in that article is illustrated by article 1978, which provides that:
No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it can not be annulled, although it prove injurious to the creditors; and although made in bad faith, it can not be rescinded, unless it operate to their injury.
Hence, the two elements of fraud in the context of a revocatory action are bad faith and injury to the creditor. Further, it has been held that the creditor must suffer a present injury; a future injury will not suffice. The court in Feist v. Willer & Gamm, Inc., 16 La.App. 618, 133 So. 797 (1931), quoted with approval in Martin Lebreton Insurance Agency v. Phillips, 364 So.2d 1032 (La.1978), stated:
However, we are of the opinion that the injury which it is essential that plaintiff in a revocatory action should show, relates to a present injury and not a future injury which might occur, if and when the insolvent debtor obtains some property.
The revocatory action, we think, is given to individual creditors in contemplation that they have or will proceed under their judgments against the property of the debtor, and that when the action sought to be revoked is merely a preference, such preference must relate to property which is subject to execution under their judgments and not to property which may become subject to execution in the near or distant future. [Citations omitted.]
In conformity with the interpretation given fraud under the revocatory action articles, we will also interpret fraud as used in article 2376 to require bad faith and present injury to the complaining creditor. We find that, in the instant case, Pan Am did not suffer a present injury by being deprived of the right to garnish Jerry's salary because that salary constituted future property against which Pan Am had no present right of execution. Thus we hold that, under La.Civ.Code art. 2376, Pan Am has no right to object to Jerry's separation of property because it was not made "in fraud of" Pan Am's rights. This conclusion pretermits the need to decide whether Jerry was in bad faith.
Such an interpretation of fraud in article 2376 puts a spouse who chooses to go separate in property under article 2374 in the same position, relative to a creditor seeking to garnish the non-debtor spouse's salary, as a spouse who obtains a separation of property by getting a judicial separation of marriage or a divorce. However, article 2374 enables the spouse to terminate the community regime without having to end the marriage, thereby protecting the sanctity of the family unit, evidently one of the goals of the legislature in enacting article 2374. Such an interpretation of fraud in article 2376 also promotes consistency within the Code because it equalizes the position of the spouse who goes separate in property under article 2374 with that of the spouse who obtains a separation of property via a matrimonial agreement before or during marriage[10] or by a judicial separation of the marriage or divorce.
Therefore, we reverse the judgment of the court of appeal insofar as that court reversed the district court's grant of a separation of property to Jerry Verrette and reinstate the district court's grant of the separation of property.

DECREE
For the reasons assigned, the judgment of the court of appeal reversing the judgment of the district court granting a separation of property and allowing the garnishment of Jerry Verrette's salary to continue *1171 is reversed; judgment of the district court granting a separation of property retroactive to July 10, 1981 is reinstated.
NOTES
[1] The petition erroneously named the defendants as "Janet Buck, wife of/and Jerry Verrette" although the couple did not get married until after suit was filed.
[2] La.Civ.Code art. 2374 provides:

When the interest of a spouse in a community property regime is threatened to be diminished by the fraud, fault, neglect, or incompetence of the other spouse, or by the disorder of the affairs of the other spouse, he may obtain a judgment decreeing separation of property.
[3] La.Civ.Code art. 2376 provides:

The creditors of a spouse, by intervention in the proceeding, may object to the separation of property or modification of their matrimonial regime as being in fraud of their rights. They also may sue to annul a judgment of separation of property within one year from the date of the rendition of the final judgment. After execution of the judgment, they may assert nullity only to the extent that they have been prejudiced.
[4] These matters were subsequently consolidated with a third suit by Pan Am against Katherine Hebert, wife of/and Julius K. Buck (Janet's parents) and Janet and Jerry Verrette, seeking a "Declaratory Judgment, Revocatory Action and/or Action en Declaration de Simulation" finding a house listed on the public records as owned by the Bucks to be in reality the separate property of Janet Verrette.
[5] In the third suit, the judge held that the house in question was the separate property of Janet Verrette.
[6] Actually, Jerry and Janet Verrette appealed the judgment in the third case declaring the house to be Janet's separate property. In an answer to that appeal, Pan Am sought to have the other two judgments in the consolidated action reversed.
[7] 440 So.2d 182 (La.App. 4th Cir.1983). The court also let stand the trial court's judgment declaring the house to be Janet's separate property.
[8] 445 So.2d 445 (La.1984). Otherwise, the writ application was denied.
[9] La.Civ.Code art. 2425 (1870) provided:

The wife may, during the marriage, petition against the husband for a separation of property, whenever her dowry is in danger, owing to the mismanagement of her husband, or otherwise, or when the disorder of his affairs induces her to believe that his estate may not be sufficient to meet her rights and claims.
La.Civ.Code art. 2434 (1870) provided:
The creditors of the husband may object to the separation of property decreed and even executed with a view to defraud them. They may even become parties to the suit for a separation of property, and be heard against it.
[10] La.Civ.Code art. 2329.