# Supreme Court of Louisiana

The Opinions handed down on the **25th day of January, 2017**, are as follows:

**BY WEIMER, J.**:

2016-C -0768        RADCLIFFE 10, L.L.C. v. RONALD G. BURGER AND LYNDA O. BURGER
                    (Parish of St. Tammany)

                    Judge James T. Genovese, assigned as Justice ad hoc, sitting for
                    Knoll, J., for oral argument. He now sits as an elected Justice
                    at the time this opinion is rendered.

                    Retired Judge Marion Edwards assigned as Justice as hoc, sitting
                    for Hughes, J., recused. For the foregoing reasons, the judgment
                    of the trial court is reversed.  Radcliffe 10, L.L.C.'s action is
                    dismissed with prejudice, with all costs of these proceedings,
                    trial and appeal, assessed against Radcliffe 10, L.L.C.
                    REVERSED AND RENDERED.

                    HUGHES, J., recused.
                    GUIDRY, J., dissents and assigns reasons.
                    CLARK, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2016-C-0768

RADCLIFFE 10, L.L.C.

VERSUS

RONALD G. BURGER AND LYNDA O. BURGER

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FIRST CIRCUIT, PARISH OF ST. TAMMANY*

**WEIMER**, Justice[1]

This action for nullity was brought by a judgment creditor against a judgment debtor and his wife. At issue is whether the spouses' failure to file a codally-required joint petition to commence the termination of their community property regime, pursuant to La. C.C. art. 2329, results in an absolute nullity or a relative nullity. Because the failure to file a joint petition results in a relative nullity as defined by La. C.C. art. 2031, the trial court judgment is reversed, and judgment is rendered in favor of Ronald and Lynda Burger.

**FACTS AND PROCEDURAL HISTORY**

---

[1] Judge James T. Genovese, assigned as Justice ad hoc, sitting for Knoll, J., for oral argument. He now sits as an elected Justice at the time this opinion is rendered.

Retired Judge Marion Edwards assigned as Justice ad hoc, sitting for Hughes, J., recused.

A judgment creditor, Radcliffe 10, L.L.C., filed a revocatory action pursuant to La. C.C. art. 2036 against a judgment debtor, Ronald Burger, and his wife, Lynda Burger, seeking to have the spouses' post-marital matrimonial agreement and/or the related judgment declared null.[2] The Burgers' matrimonial agreement, which terminated their legal property regime and established a separate property regime, received court approval in an action pursuant to La. C.C. art. 2329.[3] In this agreement, the Burgers also "settle[d] all claims, rights, and obligation[s] resulting from their community property regime" and partitioned their property. The matrimonial agreement and the judgment approving the matrimonial agreement were entered into and signed after Radcliffe's judgment, which exceeded $3.4 million, was rendered against Mr. Burger, but before Radcliffe's judgment was signed by the court.

In a motion for summary judgment filed in its revocatory action, Radcliffe urged that the Burgers' "matrimonial agreement approved by the court's Termination Judgment is void" for failure to comply with the form requirements of Article 2329, in that the Burgers' Article 2329 action was not commenced by the required joint petition. The trial court found "that the joint petition basis upon which counsel relies does not warrant the granting of a summary judgment" and denied Radcliffe's motion for summary judgment. The instant matter then proceeded to trial.

---

[2] Because the factual and procedural background for the various actions that preceded this matter is set forth in exquisite detail in the appellate court's decision in this case, further elaboration is unnecessary to resolve this issue. See **Radcliffe 10, L.L.C. v. Burger**, 14-0347 (La.App. 1 Cir. 3/28/16), 191 So.3d 79.

[3] The approval judgment stated: "the matrimonial agreement ... between Ronald G. Burger and Lynda O. Burger, terminating the legal community of acquets and gains and establishing a separation of property regime is approved in accordance with Civil Code article 2329."

2

With a successor judge presiding,[4] Radcliffe re-urged the issue determined in its prior motion for summary judgment, that is, the Burgers' "judgment [in the Article 2329 action] is a nullity and the matrimonial agreement is void *ab initio*" for failure to strictly comply with the requirements of Article 2329. The case was submitted to the trial court on written briefs "in lieu of live testimony."

Contrary to the prior ruling on Radcliffe's motion for summary judgment, the successor judge revoked the judgment terminating the Burgers' community regime "ab initio for failure to follow the procedural requirements" of Article 2329, finding that the "judgment was null and void and of no legal effect at any time." Radcliffe was given "the right to have any recordation of [the Burgers' termination of their community property regime] judgment ... cancelled."

---

[4] After ruling on Radcliffe's motion for summary judgment, the original trial judge in this matter was elected to the court of appeal.

On appeal, an *en banc* panel of ten judges[5] was unable to reach a majority decision in this matter; therefore, the trial court's judgment was upheld. The appellate court judges split on the issue of whether the Burgers' failure to file a joint petition as required by La. C.C. art. 2329 resulted in an absolutely null or a relatively null matrimonial agreement and judgment approving the matrimonial agreement. See **Radcliffe 10, L.L.C. v. Burger**, 14-0347 (La.App. 1 Cir. 3/28/16), 191 So.3d 79. The Burgers' subsequent writ application was granted by this court for determination of whether the spouses' failure to file a joint petition in the Article 2329 action resulted in an absolutely null or a relatively null matrimonial agreement and/or judgment in the Article 2329 action. See **Radcliffe 10, L.L.C. v. Burger**, 16-0768 (La. 9/6/16), __ So.3d __.

## DISCUSSION

---

[5] Two members of this twelve-member court did not participate in the decision.

The Burgers had a legal regime, and were free during their marriage to modify or terminate their legal regime. See La. C.C. art. 2328 ("A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime."). As contracts, matrimonial agreements are governed by the general rules of conventional obligations, La. C.C. arts. 1906, *et seq.* See La. C.C. art. 1915. Because matrimonial agreements are "given a special designation" in the civil code, they are nominate contracts, subject also to the special rules in the title on matrimonial regimes, La. C.C. arts. 2325, *et seq.*[6] See La. C.C. arts. 1914 & 1916.

Acting under the authority afforded by La. C.C. art. 2328, the Burgers (during their marriage) entered into a matrimonial agreement to terminate their legal regime, create a separate property regime, and partition their property. The Burgers' matrimonial agreement was made by authentic act in accordance with the form requirements of Article 2331.[7] However, also relevant to the Burgers' termination of their legal regime is La. C.C. art. 2329, which in relevant part provides:

> Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
>
> Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.

---

[6] "A matrimonial agreement is governed by the general rules of conventional obligations unless otherwise provided in [the] Title" of matrimonial regimes. La. C.C. art. 2328, 1979 Revision Comment (b).

[7] "A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses." La. C.C. art. 2331.

The words of Article 2329 are clear and unambiguous. "[T]he spouse's ability to implement" a matrimonial agreement during the marriage is subject to the procedural limitations imposed by Article 2329.[8] This article clearly requires a joint petition by the spouses to terminate a matrimonial regime. Compliance with Article 2329 in this regard bears on the validity and enforceability of the matrimonial agreement.[9]

The petition that commenced the Burgers' Article 2329 proceeding named Mrs. Burger as a defendant rather than a joint petitioner. Thus, the Burgers' Article 2329 action was indisputably not commenced by joint petition as codally required for the implementation of their matrimonial agreement. For this reason, the trial court revoked the Burgers' judgment in the Article 2329 action *ab initio* and declared that judgment to be "null and void and of no legal effect at any time." Five members of the *en banc* panel of ten hearing this matter on appeal agreed.

---

[8]  See **Matter of Boyer**, 616 So.2d 730, 732 (La.App. 1 Cir. 1993), writ denied, 620 So.2d 882 (La. 1993);  see also Katherine S. Spaht and Cynthia Samuel, *Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law*, 40 La. L. Rev. 83, 90 (1979).

[9]  See 16 ANDREA CARROLL & RICHARD D. MORENO, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES § 8:6, p. 855 (4th ed. 2013).

Although Article 2329 requires the filing of a joint petition, this codal provision does not provide an express remedy for a proceeding to terminate a matrimonial regime that is flawed because it was not commenced by a joint petition.[10] Therefore, other codal provisions must be examined to determine the legal effect of a failure to file a joint petition.

"A contract is null when the requirements for its formation have not been met." La. C.C. art. 2029. Because the "requirements [set forth in Article 2329] for [the] formation" and implementation of the Burgers' matrimonial agreement were not satisfied, the matrimonial agreement is null, giving rise to the issue of what type of nullity applies. The two types of nullities provided for in the civil code are absolute nullities, governed by La. C.C. art. 2030, and relative nullities, governed by La. C.C. art. 2031. Therefore, at issue here is whether the Burgers' failure to file a joint petition to commence the Article 2329 action renders their matrimonial agreement absolutely null or relatively null as defined in the following codal provisions.

---

[10] Codal provisions in other areas of the law expressly provide for a remedy. See La. C.C. art. 230, 2015 Revision Comment (a) and La. C.C.P. art. 4501 (addressing management of minor child's property); La. C.C. arts. 1541 and 1573 (establishing form requirements for donations inter vivos and testaments); La. C.C. art. 2369.8 (affording the spouses the right to partition former community property); see also La. C.C. arts. 2330, 2337 (which restrict spouses' ability to contract).

7

Article 2030 provides:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.

> Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

Article 2031 provides:

> A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.

> Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.

Accordingly, classification of the nullity involved here depends on whether Article 2329 provides a "rule of public order" intended to protect a large class of persons or whether it simply provides a rule "intended for the protection of private parties." See La. C.C. arts. 2030 & 2031. Resolution of this threshold issue determines whether Radcliffe has a right to invoke the nullity of the Burgers' matrimonial agreement for failure to file a joint petition. See *id.*

The record is devoid of an express determination by the trial court of this issue; however, the trial court's judgment implies that the failure to file a joint petition to commence an Article 2329 action results in an absolute nullity. As previously indicated, the appellate court judges evenly split on the nullity classification issue. Whether Article 2329 provides "a rule of public order" or "a rule intended for the protection of private parties" has not been expressly addressed by this court or any appellate court in prior cases.

However, the court in **Matter of Boyer** recognized that "[t]he probable goal of the [procedural] limitations [in Article 2329] appears to be the legislature's attempt to protect the less worldly spouse and to prevent that spouse from entering into disadvantageous agreements that the spouse did not fully understand." *Id.*, 616 So.2d 730, 732 (La.App. 1 Cir. 1993), writ denied, 620 So.2d 882 (La. 1993) (citing Katherine S. Spaht and Cynthia Samuel, *Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law*, 40 La. L. Rev. 83, 91 (1979) ("the concern in allowing spouses to enter into matrimonial agreements was solely for the welfare of the spouse whose contributions to the marriage were largely non-economic, and not for the interest of creditors or forced heirs.")). Stated differently, Article 2329 seeks "to prevent a spouse ... from using undue influence or otherwise overreaching to force the other ... to agree to a contract that is detrimental to the latter's interests." 16 ANDREA CARROLL & RICHARD D. MORENO, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES § 8:6, p. 848 (4th ed. 2013) (citing Pascal, *Louisiana's 1978 Matrimonial Regimes Legislation*, 53 Tul. L. Rev. 105 (1978)).

The parties do not dispute that the matrimonial agreement entered into by the Burgers, which terminated their legal regime, created a separate property regime and partitioned their property, was permissible under the law.[11] The Burgers' matrimonial agreement does not include terms that are prohibited as against public policy by La. C.C. arts. 2330 (governing the marital portion, order of succession, and management of community property), 2337 (governing the disposition of

---

[11] See La. C.C. art. 2374 (governing judgments of separation of property and providing "[w]hen the interest of a spouse in a community property regime is threatened to be diminished by the fraud, fault, neglect, or incompetence of the other spouse, or by the disorder of the affairs of the other spouse, he may obtain a judgment decreeing separation of property.").

9

undivided interests), or 2369.8 (governing the right to partition). Furthermore, Radcliffe has not alleged that "the object of [the Burgers' matrimonial agreement] is illicit or immoral" as contemplated by Article 2030.

As has been suggested by jurisprudence, we now find Article 2329 serves to protect a less worldly, economically vulnerable spouse from an overreaching spouse. See **Matter of Boyer**, 616 So.2d at 732; see also **Benedetto v. Benedetto**, 15-373, p. 7 (La.App. 5 Cir. 12/9/15), 182 So.3d 344, 349 (citing **Matter of Boyer**, 616 So.2d at 732); **Poirier v. Poirier**, 626 So.2d 868, 870 (La.App. 3 Cir. 1993), writ denied, 94-0161 (La. 3/11/94), 634 So.2d 389. In this respect, Article 2329 is designed to address the "capacity" and "free consent" of the parties at the time the matrimonial agreement was made as contemplated by Article 2031. Accordingly, we conclude that Article 2329 establishes a "rule intended for the protection of private parties," not a "rule of public order" that is intended for the protection of a large class of persons. Therefore, the Burgers' failure to file a joint petition as required by Article 2329 results in a matrimonial agreement that is relatively null.[12] See La. C.C. art. 2031.

---

[12] Such a finding is in accord with La. C.C. art. 2353, governing the unauthorized alienation of community property by a spouse without the concurrence of the other spouse.

Classification as a relative nullity is supported by the fact that Article 2329 makes court approval dependent on the best interest of the spouses. See Spaht and Samuel, *Equal Management Revisited*, 40 La. L. Rev. at 97. Furthermore, while the provisions of a matrimonial agreement may not prejudice third persons,[13] "the adverse financial effect of the proposed agreement" on others, such as forced heirs or creditors, is not a factor before the court in an Article 2329 proceeding, in the absence of an intervention pursuant to La. C.C. art. 2376.[14] See *id.*at 97-98. The rights of forced heirs and creditors are provided for elsewhere in the law. See *id.*

Concerning the remedies available to creditors, commentators have stated:

> Available to the creditors are the same remedies they have against any contract of the debtor, in particular, the revocatory action, the action in declaration of simulation, and the oblique action. Thus, for example, if a husband transferred property gratuitously to his wife by means of a matrimonial agreement, and in so doing, rendered himself insolvent or increased his insolvency, a creditor whose debt had accrued prior to the matrimonial agreement could invoke the revocatory action and avoid the transfer upon showing that the transfer was in actual or constructive fraud of his rights. [Footnotes omitted.]

---

[13] See La. C.C. art. 2328, 1979 Revision Comment (b) ("The provisions of a matrimonial agreement may not prejudice third persons. See C.C. arts. 1502 (1870) and 2036 (Rev. 1984).").

[14] "The creditors of a spouse, by intervention in the proceeding, may object to the separation of property or modification of their matrimonial regime as being in fraud of their rights." La. C.C. art. 2376.

See *id.* at 98.   Although "[t]he creditors of a spouse" are authorized by Article 2376 to intervene in a proceeding for judicial approval of a modification of a matrimonial regime, Article 2376 does not afford creditors any greater remedies relative to nullifying a matrimonial agreement than those provided for elsewhere in the law."[15]

 In fact, this court in **Pan American Import Co., Inc. v. Buck**,452 So.2d 1167 (La. 1984) recognized that "[t]he right of a creditor under article 2376 to object to a separation of property is akin to a revocatory action[16] because the creditor in both actions is avoiding a transaction or proceeding made in fraud of his rights."[17] *Id.*, 452 So.2d at 1169.

To the extent that the Burgers' matrimonial agreement is relatively null under the facts of this case, the nullity of such contract "may be invoked only by those persons for whose interest the ground for nullity was established," here the non-offending spouse, Mrs. Burger.   See La. C.C. art. 2031.   Therefore, the relative nullity of the Burgers' matrimonial agreement based on their failure to file a joint petition as required by Article 2329 cannot be invoked by Radcliffe.[18]

---

[15]   Notably, Article 2376 limits the time for bringing an action for nullity of a judgment of separation of property, and it also limits the extent to which a creditor may seek to have a judgment that has been executed annulled.

[16]   Revocatory actions are provided for in La. C.C. art. 2036, contained in the general provisions on conventional obligations, as follows:

> An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

[17]   See La. C.C. art. 2376, 1979 Revision Comment ("A creditor may sue to annul a contract of separation of property as in fraud of his rights under C.C. Arts. 2036-2044 (Rev. 1984)," that is, under the laws governing revocatory actions.); see also La. C.C. art. 2329, 1979 Revision Comment (e) ("A matrimonial agreement in fraud of creditors may be set aside by the revocatory action.   A creditor may sue to annul a matrimonial agreement as in fraud of his rights under Articles 2036-2044 of the Civil Code as revised by Acts 1984, No. 331.   *Cf.* C.C. Arts. 11 and 3183 (1870);   Art. 2376, *infra*."); La. C.C. art. 2328, 1979 Revisions Comment (b), quoted *supra*, n.13.

[18]   In light of this holding, discussion of the following issues are pretermitted: (1) whether the initial pleading in the Article 2329 action by Mr. Burger was amended as provided for in La.

Radcliffe's right to attack the validity of the Burgers' matrimonial agreement is instead grounded in La. C.C. art. 2036, *et seq.*, governing revocatory actions. Although Radcliffe asserted a revocatory action in its petition to annul, Radcliffe made a strategic decision during the trial of this matter to limit its argument to Article 2329. Concerning its request for relief under Article 2036, Radcliffe (in its trial brief) only stated:

> Finally, it is clear that the Termination Judgment is one-sided and provides no values. As such it cannot be said to provide a level of solvency to support paying the creditors' claims.

---

C.C.P. art. 1154, (2) whether deficiencies in the initial petition were waived or cured by the Burgers' consent, or (3) whether the Burgers voluntarily acquiesced in the Article 2329 judgment, see La. C.C.P. arts. 2003 & 2085.

The matter was submitted on written briefs for final adjudication in lieu of a trial on the merits, and the record is devoid of any evidence to prove Radcliffe's revocatory action, that is, that the Burgers' matrimonial agreement "cause[d] or increase[d Mr. Burger's] insolvency." See La. C.C. art. 2036. Therefore, Radcliffe's revocatory action is denied for lack of proof.[19]

## CONCLUSION

Based on the facts of this matter, the failure to file a joint petition in an action pursuant to La. C.C. art. 2329 renders a matrimonial agreement that terminates the legal regime and creates a separate property regime a relative nullity. The relative nullity of the matrimonial agreement in this regard cannot be invoked by a creditor. See La. C.C. art. 2031 (such a nullity "may be invoked only by those persons for whose interest the ground for nullity was established," the non-consenting spouse).

## DECREE

---

[19] Because this case does not involve one of the vices of form enumerated in La. C.C.P. art. 2002 (governing absolutely null judgments), Radcliffe's challenge of the Article 2329 judgment involves a vice of substance governed by La. C.C.P. art. 2004 (governing relatively null judgments). See La. C.C.P. art. 2002, 1960 Official Revision Comments (e & f); **Adair Asset Mgmt., LLC/US Bank v. Honey Bear Lodge, Inc.**, 12-1690 (La.App. 1 Cir. 2/13/14), 138 So.3d 6, 11; see also **Bernard v. Fireside Commercial Life Ins. Co.**, 633 So.2d 177, 184 (La.App. 1 Cir. 1993), writ denied, 93-3170 (La. 3/11/94), 634 So.2d 839. Louisiana C.C.P. art. 2004 requires a showing that the Article 2329 judgment was "obtained by fraud or ill practices." Relative to Radcliffe, the Burgers' failure to file a joint petition in the Article 2329 action did not constitute "improper practice or procedure" amounting to "fraud or ill practices" as contemplated by the decision in **Kem Search, Inc. v. Sheffield**, 434 So.2d 1067, 1070 (La. 1983).

Radcliffe's challenge is also governed by La. C.C. art. 2376, which addresses a creditor's rights relative to a judgment of separation of property. Consistent with La. C.C.P. art. 2004, Article 2376 affords the creditors of a spouse the right to sue to annul a judgment of separation of property "as being in fraud of their rights." However, "[a]fter execution of the judgment, [the creditors of a spouse] may assert nullity [of the judgment] only to the extent that they have been prejudiced." La. C.C. art. 2376.

Based on the manner in which this case was submitted for decision to the trial court, the record is devoid of any evidence to satisfy Radcliffe's burden of proof under La. C.C. art. 2376 or La. C.C.P. art. 2004.

For the foregoing reasons, the judgment of the trial court is reversed. Radcliffe 10, L.L.C.'s action is dismissed with prejudice, with all costs of these proceedings, trial and appeal, assessed against Radcliffe 10, L.L.C.

**REVERSED AND RENDERED**.

# SUPREME COURT OF LOUISIANA

## NO. 2016-C-0768

## RADCLIFFE 10, L.L.C.

### VERSUS

### RONALD G. BURGER AND LYNDA O. BURGER

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF ST. TAMMANY

**GUIDRY, Justice, dissents and assigns reasons.**

I respectfully dissent from the majority's reversal of the trial court's ruling. I would instead affirm the ruling of the trial court. In my view, the failure of the defendants to file a joint petition as required by the dictates of La. C.C. art. 2329 results in an absolute nullity as defined by La. C.C. art. 2030.

It is undisputed that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Sultana Corp. v. Jewelers Mutual Ins. Co., 03-0360, p. 9 (La.12/3/03), 860 So.2d 1112, 1119. "As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found." Watkins v. Exxon Mobil Corp., 13-1545 (La. 5/7/14), 145 So.3d 237, 243 (citing St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671, 676 (1947)).

At issue, La. C.C. art. 2329 provides that spouses may enter into a matrimonial agreement during marriage, but "**only upon joint petition** and a finding by the court

that this serves [the parties] best interests and that they understand the governing principles and rules." (Emphasis added.) The majority concedes the words of this provision are "clear and unambiguous" insofar as it requires the filing of a joint petition by the spouses to terminate the matrimonial regime. However, because every word or phrase of a stature must be afforded its full meaning, the majority, in my view, goes astray in its analysis by effectively eliminating the mandatory element of the filing of a "joint" petition in reaching a result that I find was not intended by the legislature.

The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Stogner v. Stogner, 98-3044, p. 5 (La. 7/7/99), 739 So.2d 762, 766. The meaning and intent of a law are determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. SWAT 24 Shreveport Bossier, 00-1695, p. 11, 808 So.2d 294, 302 (La. 6/29/01). Applying these precepts and guidelines to the instant case, I conclude the legislature intended for a strict application of La. C.C. art. 2329. The dictates of the codal provision are not mere policy concerns, but rather a protective mandate made part of a statutory enactment that restricts the establishment of a separation of property regime confected during the marriage. Muller v. Muller, 10-540 (La. App. 5 Cir. 6/29/11), 72 So.3d, 364, 368. The codal requirement that any party entering into an agreement that modifies or terminates the matrimonial regime after marriage must do so by joint petition is without exception. The given facts, or those of any other case, cannot serve to vitiate the requirements of La. C.C. art. 2329.

Because I believe the dictates of La. C.C. art. 2329 to be clear and dispositive,

2

I further disagree with the majority's conclusion that the failure to file a joint petition rendered the matrimonial agreement a relative nullity under La. C.C. art. 2013 because it is "a rule intended for the protection of private parties," namely, the defendants. Indisputably, the dictates of La. C.C. art. 2329 are for the protection of the married couple. Nevertheless, the consequences of entering into a contract that terminates an existing matrimonial regime cannot be viewed in a vacuum, because termination of an existing matrimonial regime clearly may have a rippling effect upon a larger class of persons and institutions by virtue of the laws of, including but not limited to, ownership, heritable rights, and obligations. Thus, I would find that the defendants' failure to comply with the mandatory requirements of La. C.C. art. 2329 rendered the act absolutely null because "it violate[d] a rule of public order" as contemplated by La. C.C. art. 2030. Such a finding is best exemplified under the given facts. By their own admission, the defendants sought to terminate the community regime so as to avoid a multi-million dollar judgment rendered against Mr. Burger in favor of the plaintiff.

Finally, without conceding my position that the ruling of the trial court should be affirmed, the case should be remanded to the trial court for consideration of the merits of the plaintiff's revocatory action in light of the majority's position that the defendants' failure to file a joint petition resulted in a relative nullity. The plaintiff timely filed its action in accordance with La. C.C. art. 2376, which affords a creditor the opportunity to assert the nullity of a judgment to the extent it has been prejudiced. The tenor of the litigation in the trial court shifted from the merits of the revocatory action to consideration of the issues concerning the validity of the marital agreement. A remand to the trial court would afford the plaintiff the opportunity to litigate fully its claims of fraud under La. C.C. art. 2376.

SUPREME COURT OF LOUISIANA

No. 2016-C-0768

RADCLIFFE 10, L.L.C.

VERSUS

RONALD G. BURGER AND LYNDA O. BURGER

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF ST. TAMMANY

**Clark, Justice, dissenting.**

I respectfully dissent from the majority opinion for the reasons that follow. "[T]he paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law." *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007–2371, p. 13 (La.7/1/08), 998 So.2d 16, 27, *citing State v. Johnson*, 2003–2993, p. 12 (La.10/19/04), 884 So.2d 568, 575. It is well established that "[t]he starting point for the interpretation of any statute is the language of the statute itself." *Dejoie v. Medley*, 2008–2223 (La.5/5/09), 9 So.3d 826, 829. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the legislature's intent. *Id.*; La. Civ.Code art. 9; La. R.S. 1:4.

At issue, La. C.C. art. 2329 clearly states, in no ambiguous terms:

Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage **only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules**. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.

1

[Emphasis added]. A clear reading of the code article sets forth two requirements before spouses can terminate a matrimonial regime during the marriage: (1) a joint petition by the spouses *and* (2) a finding by the court that the parties understand the consequences of their action and that such action serves their best interests. The legislature's use of the word "only" and the conjunction "and" leave but one conclusion that both requirements must be satisfied for the matrimonial agreement to have any legal effect.

The legislature expressly mandated the necessary steps for spouses to take to terminate the community property regime. The majority is correct in noting that the Civil Code does not provide an express remedy for the occasion when one of the steps is not met. However, I disagree with the conclusion my colleagues reach as to what type of nullity applies.

As governed by La.C.C. Art. 2030, absolute nullities apply to contracts that violate "a rule of public order." Conversely, a contract is relatively null when it violates a rule "intended for the protection of private parties." See La. C.C. art. 2031. Here, I believe the majority erred in finding that Article 2329 is a rule intended only for the protection of private parties. While a primary intention of the article may be to safeguard the interest of an unsuspecting spouse, it does not preclude the existence of other intentions, namely, to protect the rights of the public at large. The legal regime of a couple, whether separate or community, affects the rights of far more people, classes, and institutions than just the parties themselves. Creditors, heirs, and legatees are affected, to name a few, as are the overarching systems of property ownership, successions, inheritance, and obligations. For these reasons, I find the failure to strictly comply with the

2

mandates of Article 2329 renders the matrimonial agreement absolutely null.  I would affirm the judgment of the trial court.