DWAYNE BLACKMAN                    *        NO. 2024-CA-0507

VERSUS                            *

                                           COURT OF APPEAL
GJNOLA, LLC                       *
                                           FOURTH CIRCUIT
                                  *
                                           STATE OF LOUISIANA
                        * * * * * * *


APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-02722, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge
Monique Morial)


Dwayne Blackman
3720 Piedmont Drive
New Orleans, LA 70122


            PLAINTIFF/APPELLANT


Cherie E. Teamer Henley
Teamer Legal Corporation, LLC
2661 Gravier Street, Suite B
New Orleans, LA 70119


            COUNSEL FOR DEFENDANT/APPELLEE


                              **REVERSED AND REMANDED**
                              **JANUARY 30, 2025**

Dwayne Blackman (hereinafter "Mr. Blackman") seeks review of the trial court's December 10, 2024 judgment granting GJNOLA, LLC's (hereinafter "GJNOLA") motion for summary judgment. After consideration of the record before this Court and the applicable law, we reverse the judgment of the trial court.

## Facts and Procedural History

On January 27, 1992, Mrs. Viola Ford Blackman (hereinafter "Mrs. Blackman") purchased the property located at 3720 Piedmont Drive in New Orleans, Louisiana (hereinafter "the property").[1] Mrs. Blackman failed to pay the property taxes in 2018 and, at the request of Mr. Blackman, Gregory Johnson, Sr. (hereinafter "Mr. Johnson") agreed to pay the property taxes on her behalf.[2] Mr. Johnson loaned Mr. Blackman approximately $3,000.00 to pay the property taxes and Mr. Blackman worked as a repairperson for Mr. Johnson in order to pay off the

---

[1] Mr. Blackman inherited the property by testate dated March 21, 2000, following Mrs. Blackman's death.

[2] The parties have a lengthy familial relationship and Mr. Johnson previously assisted Mr. Blackman with other financial matters. Mr. Johnson also purchased equipment for Mr. Blackman to use while making repairs at Mr. Johnson's real estate properties and recommended Mr. Blackman's services to other individuals.

1

debt. In 2020, Mrs. Blackman again failed to pay the property taxes and Mr. Johnson agreed to pay on her behalf.[3] Both parties concede that in exchange for paying the property taxes, Mrs. Blackman would sell the property to GJNOLA. According to Mr. Blackman, the sale of the property was contingent upon Mr. Johnson agreeing to sell the property back to Mrs. Blackman upon repayment of the property taxes. Conversely, Mr. Johnson maintains that he never agreed to sell the property back to Mrs. Blackman. In an Act of Cash Sale, dated June 25, 2020, GJNOLA purchased the property for $14,397.52 (the same amount of the property taxes) from Mrs. Blackman. The parties also agreed that Mr. Blackman would pay $1,000.00 per month in "rent" to GJNOLA in order for both Mrs. Blackman and Mr. Blackman to continue to reside at the property.[4] Mr. Blackman contends that the "rent" payments were to go towards the purchase price of the property, at which time Mr. Johnson would transfer the property back to Mrs. Blackman. GJNOLA denies this contention.

In November 2021, Mr. Blackman ceased paying "rent" and GJNOLA initiated eviction proceedings. At this juncture, Mr. Blackman had paid approximately $15,000.00. While the eviction proceedings were pending, Mr. Blackman filed a petition for declaratory judgment, in proper person, challenging the validity of the sale of the property and seeking to have the Act of Cash Sale declared a relative nullity. Mr. Blackman asserted that the sale of the property was a relative nullity because Mrs. Blackman lacked the legal capacity to execute the Act of Cash Sale. GJNOLA responded by filing an answer and reconventional

---

[3] Prior to agreeing to pay the taxes, Mr. Johnson directed Mr. Blackman to discuss the issue with his son, Gary Johnson.

[4] The parties concede that there is no written lease agreement.

demand arguing that Mr. Blackman never asserted a defect with the sale of the property. It sought possession of the property and dismissal of the petition for declaratory judgment.

On December 8, 2023, GJNOLA filed a motion for summary judgment contending that no genuine issues of material fact exist as to the validity of the Act of Cash Sale. In support of the motion for summary judgment, GJNOLA attached the Act of Cash Sale and the affidavits of Mr. Johnson, Gary Johnson and Scott Simmons. Mr. Blackman opposed the motion for summary judgment, asserting that genuine issues of material fact exist regarding the validity of the sale of the property due to Mrs. Blackman's legal capacity at the time of the sale. To his opposition, Mr. Blackman attached ten years of certified medical records for Mrs. Blackman. After multiple continuances, the matter went before the trial court and by judgment dated December 10, 2024, the trial court granted the motion for summary judgment.[5] The trial court found the Act of Cash Sale valid, placed GJNOLA in possession of the property and dismissed the petition for declaratory judgment. On June 12, 2024, Mr. Blackman filed a motion for suspensive appeal seeking to appeal the trial court's judgment granting the motion for summary judgment. The trial court granted the motion for suspensive appeal and ordered Mr. Blackman to pay a $50.00 appeal bond.

On September 30, 2024, GJNOLA filed a motion to dismiss the appeal in this Court. GJNOLA argues the appeal should be dismissed based on Mr. Blackman's failure to pay the appeal bond, insufficiency of the appeal bond and

---

[5] The trial court's original judgment was rendered on June 7, 2024. On November 25, 2024, this Court ordered the trial court to amend its original judgment to ensure compliance with La. C.C.P. art. 1918. The trial court supplemented the record with the amended judgment.

3

failure of Mr. Blackman to file his brief in accordance with the Uniform Rules, Courts of Appeal.[6]

## Motion to Dismiss

Prior to addressing the merits of the appeal, we consider GJNOLA's motion to dismiss. GJNOLA seeks dismissal of Mr. Blackman's suspensive appeal on three grounds: (1) Mr. Blackman's failure to pay the appeal bond pursuant to La. C.C.P. art. 2124; (2) the appeal bond amount is insufficient; and (3) Mr. Blackman's failure to file his brief in accordance with Uniform Rules, Courts of Appeal, Rule 2-12.4.[7]

As a threshold matter, we find GJNOLA's motion to dismiss the appeal untimely. La. C.C.P. art. 2161 provides,

> An appeal shall not be dismissed because the trial record is missing, incomplete or in error no matter who is responsible, and the court may remand the case either for retrial or for correction of the record. An appeal shall not be dismissed because of any other irregularity, error or defect unless it is imputable to the appellant. Except as provided in Article 2162, a motion to dismiss an appeal because of any irregularity, error, or defect which is imputable to the appellant must be filed within three days, exclusive of holidays, of the return day or the date on which the record on appeal is lodged in the appellate court, whichever is later.

An "appellant's tardiness in furnishing security merely constitutes an irregularity or defect imputable to the appellant which may form a basis for the appellee to move for dismissal of the suspensive appeal under [La.] C.C.P. art. 2161." *PRCP-NS New Orleans, LLC v. Swanson*, 2022-0393, p. 8 (La.App. 4 Cir. 12/16/22), 354 So.3d 239, 245 (citations omitted). Mr. Blackman's failure to pay the appeal bond

---

[6] This Court deferred the motion to dismiss to the panel ultimately assigned to decide the merits of the appeal.

[7] La. C.C.P. art. 2124 is entitled "Security to be furnished for an appeal." Uniform Rules, Courts of Appeal, Rule 2-12.4 outlines the requirements for the contents of an appellant brief.

is an irregularity or defect that would form the basis for GJNOLA to seek dismissal of the suspensive appeal. *Id*. However, La. C.C.P. art. 2161 only grants GJNOLA three days from the date the appeal was lodged in this Court to file the motion to dismiss the appeal. The appeal was lodged on August 14, 2024 and GJNOLA did not file its motion to dismiss appeal until September 30, 2024. Accordingly, GJNOLA's motion to dismiss the appeal is untimely.

Notwithstanding the untimeliness of the motion to dismiss the appeal, we recognize Mr. Blackman did not timely pay the suspensive appeal bond. However, it is within the authority of this Court to maintain the appeal as devolutive. "In ordinary proceedings, a failure to pay a suspensive appeal bond is not generally considered grounds for dismissal because the appeal is simply converted to a devolutive appeal when the appeal bond is not timely paid." *Franco v. Franco*, 2004-0967, p. 13 (La.App. 4 Cir. 7/28/04), 881 So.2d 131, 139 (citation omitted). La. C.C.P. art. 2087(A) provides that a devolutive appeal may be taken within sixty days of the expiration of the delay for filing a motion for new trial or judgment notwithstanding the verdict; or the date of the mailing of the trial court's refusal to grant a motion for new trial or judgment notwithstanding the verdict. Mr. Blackman nor GJNOLA filed a motion for new trial or judgment notwithstanding the verdict. The trial court's original judgment was rendered on June 7, 2024 and Mr. Blackman filed the motion for appeal on June 12, 2024—well within the sixty-day delay set forth in La. C.C.P. art. 2087(A). Accordingly, we convert Mr. Blackman's suspensive appeal to a devolutive appeal and deny GJNOLA's motion to dismiss. We pretermit discussion of the insufficiency of the appeal bond and

5

failure of Mr. Blackman to file his brief in accordance with Uniform Rules, Courts of Appeal, Rule 2-12.4.[8]

## Standard of Review

This Court reviews a trial court's decision to grant or deny a motion for summary judgment *de novo*. *Reddick v. State*, 2021-0197, p. 5 (La.App. 4 Cir. 9/29/21), 328 So.3d 504, 507. We have stated the applicable standard of review as follows:

> Appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.

*Id*., 2021-0197, p. 5, 328 So.3d at 507-08 (quoting *Chatelain v. Fluor Daniel Const. Co.,* 2014-1312, p. 3 (La.App. 4 Cir. 11/10/15), 179 So.3d 791, 793).

---

[8] As we convert Mr. Blackman's appeal to a devolutive appeal, discussion regarding the insufficiency of the appeal bond is unwarranted since a bond is not required for a devolutive appeal. La. C.C.P. art. 2124(A). Although Mr. Blackman's brief does not fully comply with Uniform Rules, Courts of Appeal, Rule 2-12.4, we exercise our discretion in considering his arguments on appeal. *See Seals v. Corona*, 2022-0694, p. 11 (La.App. 4 Cir. 3/29/23), 382 So.3d 188, 195 (holding that although Appellant's brief did not comply with Uniform Rules, Courts of Appeal, Rule 2-12.4, since Appellant was self-represented, this Court would "nonetheless examine the record in light of the applicable law.").

## Discussion

On appeal, Mr. Blackman asserts that genuine issues of material fact exist as to whether the Act of Cash Sale is a relative nullity. He maintains that the trial court erred in granting summary judgment and finding the Act of Cash Sale valid because Mrs. Blackman lacked the legal capacity to execute the document. Before addressing the merits, we will briefly outline the governing summary judgment principles.

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action… . The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). A motion for summary judgment may be granted if the pleadings, depositions, answers to discovery, admissions on file and affidavits demonstrate that there is no genuine issue of material fact and the mover is entitled to a judgment as a matter of law. *Reddick*, 2021-0197, p. 6, 328 So.3d at 508 (citation omitted).

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Id*. (citation omitted). "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id*. (citations omitted). Whether a fact is material is a determination that must be made based upon the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 2017-0040, p. 7 (La.App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citation omitted). La. C.C.P. art 966(D)(1) provides that:

7

> The burden of proof rests with the mover [on a motion for summary judgment]. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

If the adverse party fails to set forth specific facts demonstrating a genuine issue of material fact, summary judgment shall be rendered against the adverse party if appropriate. La. C.C.P. art. 967(B).

All persons have the capacity to contract except interdicts, unemancipated minors and persons deprived of reason at the time of entering the contract. La. C.C. art. 1918. A presumption exists that all persons have the capacity to contract and a lack of capacity must be proven by clear and convincing evidence. *Matter of Adoption of Smith*, 578 So.2d 988, 992-93 (La.App. 4th Cir. 1991) (citation omitted). Mrs. Blackman was not an interdict, thus any challenge to her legal capacity to execute the Act of Cash Sale is based on the laws of contracting regarding noninterdicts. "A contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding, or was made within thirty days of his death, or when application for interdiction was filed before his death." La. C.C. art. 1926. A contract made by a person without legal capacity is relatively null and may be rescinded at the request

8

of the person or his legal representative. La. C.C. art. 1919.[9] "A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made." La. C.C. art. 2031. "Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative." *Id*. An action to annul "a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud." La. C.C. art. 2032.

Mr. Blackman challenges the validity of the Act of Cash Sale maintaining that Mrs. Blackman lacked the legal capacity to understand the contractual agreement.[10] Mr. Blackman asserts that Mrs. Blackman's medical records establish the existence of ongoing issues surrounding her cognitive abilities.[11] The initial burden rests with GJNOLA to demonstrate that there are no genuine issues of material fact regarding the validity of the Act of Cash Sale. GJNOLA submitted three affidavits with its motion for summary judgment. The affidavits of Mr. Johnson and Gary Johnson attest that they were not aware that Mrs. Blackman

_____

[9] "The two types of nullities provided for in the civil code are absolute nullities, governed by La. C.C. art. 2030, and relative nullities, governed by La. C.C. art. 2031." *Radcliffe 10, L.L.C. v. Burger*, 2016-0768, p. 5 (La. 1/25/17), 219 So.3d 296, 300.

[10] The record before this Court does not reflect whether Mr. Blackman initiated succession proceedings as the sole heir of Mrs. Blackman. We note that "[i]n the absence of renunciation, a successor is presumed to accept succession rights." La. C.C. art. 962. "Acceptance may either be formal or informal… . It is informal when the successor does some act that clearly implies his intention to accept." La. C.C. art. 957. "An act of ownership that can be done only as a successor implies acceptance… ." La. C.C. art. 959.

[11] GJNOLA did not formally object to the admission of the certified medical records submitted by Mr. Blackman. "A party may waive or be estopped from making an objection to the admission or exclusion of evidence. That waiver may arise from [the] failure to object... ." *Cross v. Cutter Biological, Div. of Miles Inc.*, 1994-1477, p. 8 (La.App. 4 Cir. 5/29/96), 676 So.2d 131, 139 (citation omitted).

suffered from mental deficiencies. The affidavit of Scott Simmons provides that he notarized the Act of Cash Sale executed by Mrs. Blackman and Mr. Blackman signed as one of the witnesses confirming the validity of the document. Under La. C.C.P. art. 966, the burden then shifts to Mr. Blackman to produce factual support sufficient to establish the existence of genuine issues of material fact regarding the validity of the Act of Cash Sale and whether Mrs. Blackman had the legal capacity to execute the document. The trial court determined that Mr. Blackman did not provide sufficient evidence establishing proof of Mrs. Blackman's impaired mental capacity at the time of the execution of the Act of Cash Sale in 2020. We disagree. Our *de novo* review of the record demonstrates that the medical records submitted by Mr. Blackman indicate that Mrs. Blackman had been suffering from mental deficiencies as far back as 2007. On May 5, 2011, Dr. Robert Occhipinti (hereinafter "Dr. Occhipinti"), Mrs. Blackman's treating physician, notes that she was suffering from "neurological symptoms of memory lapses or loss." In certified medical records dated July 26, 2013, Dr. Occhipinti describes a neurological gait abnormality and also records that Mrs. Blackman is suffering from neurological symptoms of "[c]onfusion, memory lapses or loss, and difficulty with balance." Later that month, Dr. Occhipinti emphasizes that Mrs. Blackman is "becoming more demented." Additionally, Mrs. Blackman's death certificate lists her cause of death as Alzheimer's disease.[12]

Further impugning the validity of the Act of Cash Sale is the amount for which Mrs. Blackman sold the property. Mrs. Blackman purchased the property more than thirty years ago for $59,500.00. The Act of Cash Sale reveals that Mrs.

_____

[12] Mrs. Blackman died on October 18, 2021.

Blackman sold the property to GJNOLA for $14,347.52. According to the Orleans Parish Tax Assessor website, the 2024 value of the property is $127,900.00.[13] The "sale" of the property, for that amount, seems inequitable considering the value of the property. The tax assessor website further indicates that on June 25, 2020, the property was transferred to the City of New Orleans, for $14,347.00. The notarial archive number and instrument number of the transfer of the property matches the conveyance records filing of the Act of Cash Sale between Mrs. Blackman and GJNOLA. Five days later, the City of New Orleans sold the property to GJNOLA for $12,671.00. Further, between July 2020 and October 2021, Mr. Blackman paid approximately $15,000.00 in rent; effectively, re-paying GJNOLA the amount of the unpaid taxes, as Mr. Blackman contends. Considering the foregoing, along with the medical records as proof that Mrs. Blackman suffered from diminished mental capacity, genuine issues of material fact exist which negates the granting of summary judgment.

Based on the evidence submitted, we find genuine issues of material fact exist as to whether the Act of Cash Sale is a relative nullity. Therefore, the trial court erred in granting summary judgment.

## Decree

For the foregoing reasons, the December 10, 2024 judgment of the trial court is reversed and the matter remanded for further proceedings.

**REVERSED AND REMANDED**

---

[13] https://www.nolaassessor.com/property-search/. This Court may take judicial notice of government websites. *Mendoza v. Mendoza*, 2017-0070, p. 6 (La.App. 4 Cir. 6/6/18), 249 So.3d 67, 71 (citation omitted).

11