McDonald, j.
lain October 2008, a petition to declare an amended final judgment an absolute nullity was filed in the Twenty-Second Judicial District Court. After a hearing, the trial court found that the challenged judgment was not null. The matter before us is an appeal of that decision.
FACTS
The proceedings in this matter were instituted in August 2003, when a petition was filed by appellee in this appeal, Radcliffe 10, L.L.C. (hereinafter Radcliffe), for damages for breach of contract and unfair trade practices against Zip Tube Systems *827 of Louisiana, Inc., Burger Engineering, L.L.C., Ronald Burger, and Bryan Burger, the appellants in this matter. In October 2003, appellants (hereinafter Burger) filed a petition for damages for breach of contract against Radcliffe. The suits[1] were subsequently consolidated and were actively and acrimoniously pursued through a trial held on February 10, and 11, and April 4, 5, and 6, 2005.
On July 1, 2005, thirteen pages of written reasons finding in favor of Radcliffe were mailed to counsel for the parties. Prior to the signing of a judgment, Burger filed a motion to recuse the trial judge. The judge assigned to hear the matter ruled that the motion, filed after the conclusion of the trial on the merit s, was untimely. Writs were filed, which were denied by this court. The supreme court granted writs and remanded the matter to the trial court for a hearing on the recusal motion. After a full hearing, the assigned judge denied the recusal motion. Thereafter, a judgment on the merits of the trial was signed by the original trial judge on March 23, 2007.
On March 29, 2007, the trial judge vacated the March 23, 2007 judgment, stating that the judgment had been signed through clerical error. The original | judgment failed to award any general damages. The trial judge signed a judgment on March 29, 2007, substantially similar to the earlier judgment, but vacating that judgment and ordering Burger to pay general damages in the amount of $3,428,000.00. This judgment conformed to the judge’s written reasons issued June 24, 2005.
On March 30, 2007, Radcliffe filed a motion for a new trial “solely for the purpose of allowing the Court to issue a new judgment properly reflecting all of the damage elements contained in its Reasons for Judgment dated June 24, 2005.” The motion was denied as moot.
On April 30, 2007, Burger filed a motion and order for suspensive appeal of the March 23, 2007, and March 29, 2007 judgments. The appeal, converted to a devolu-tive appeal, was heard by this court, and a judgment was rendered that affirmed in large part the district court judgment.[2] Burger filed a request for rehearing that, among other issues, contended that the March 29, 2007 judgment was null. The request was considered and denied. Burger also alleged the nullity of the March 29, 2007, judgment as an error in their application for writ to the supreme court; the supreme court denied the writ of review.[3]
A flurry of proceedings followed: bankruptcy, garnishment, motion for judgment debtor rule, motion to quash records deposition, and a motion to declare the amended final judgment an absolute nullity. On October 9, 2008, Burger filed a petition to declare the amended final judgment an absolute nullity. On November 13, 2008, a consolidated hearing was conducted on several matters, including the issue of the nullity of the March 29, 2007 judgment. The trial court rendered judgment in favor of Radcliffe and against Burger, declared that the judgment was not a nullity, and found that the judgment on the sole legal issue of |sthe nullity of the judgment was a final judgment under C.C.P. article *828 1915(B), and there was no just reason for delay of the appeal.
Burger appeals, raising two assignments of error: (1) the district court erred in refusing to declare the amended final judgment signed on March 29, 2007, an absolute nullity, and (2) the district court erred in dismissing the petition for nullity and denying two related motions filed to prevent execution of the null judgment.
DISCUSSION
Burger contends that the March 29, 2007, judgment is an absolute nullity. The law on the procedure for an action of nullity of judgments controlling the issue before us is found in Louisiana Code of Civil Procedure articles 2001 through 2006. Specifically, article 2005 provides:
A judgment may be annulled prior to or pending an appeal therefrom, or after the delays for appealing have elapsed.
A judgment affirmed, reversed, amended, or otherwise rendered by an appellate court may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court. (Emphasis added)
An action of nullity does not affect the right to appeal.
The first paragraph of Article 2005 codifies an exception to the general rule, under La. C.C.P. art. 2088, that a trial court is divested of jurisdiction when an appeal is filed. New Orleans Redevelopment Authority v. Lucas, 02-2344 (La.App. 4 Cir. 8/25/04), 881 So.2d 1246, 1252, writ denied, 04-2755 (La.1/28/05), 893 So.2d 75. It authorizes a litigant to seek direct relief in the trial court to annul a judgment before or pending an appeal, or after the delays for appealing have elapsed.
The March 23, 2007, and the March 29, 2007 judgments were in the record, when the earlier appeal to this court was considered, and in fact, Burger appealed both judgments. Therefore, Article 2005 seems to prohibit adjudication of an faction for nullity. Burger, however, presents several strenuous arguments, which we will carefully consider.
Burger contends that it does not matter that an appellate court or even the supreme court has previously affirmed the null judgment on its merit s, citing Tracy v. Dufrene, 240 La. 232, 121 So.2d 843 (1960). The facts of Tracy are clearly distinguishable, and any inferences that may be suggested by its holding do not support the result Burger seeks. The facts of our case are that this court reviewed the record containing the two judgments, and a writ was taken to the supreme court asserting error by this court in not declaring the March 29, 2007 judgment null, but the writ was denied. It is clear that there are circumstances wherein review, or even a writ denial, by the supreme court may prevent further consideration of a judgment. “Even though a writ denial is indicative of this Court’s decision not to exercise its discretionary jurisdiction ... the effect of a writ denial nonetheless brought the litigation to a close and precludes a collateral attack of that judgment.” Unwired Telecom Corp. v. Parish of Calcasieu, 03-0732 (La.1/19/05), 903 So.2d 392, 406 n. 13. We see nothing in the Tracy decision that leads us to conclude this action for nullity is proper.
Burger further argues that objections to judgments which are absolutely null can be “interposed at any time and anywhere by the party against whom it is asserted,” citing Frisard v. Autin, 98-2637 (La.App. 1 Cir. 12/28/99), 747 So.2d 813, 819, writ denied, 00-0126 (La.3/17/00), 756 So.2d 1145. The vices of form that mandate nullity of a judgment are established in La. C.C.P. art. 2002, which provides:
A. A final judgment shall be annulled if it is rendered:
*829 (1) Against an incompetent person not represented as required by law.
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to 1 jurisdiction, or against whom a valid judgment by default has not been taken.
(3) By a court which does not have jurisdiction over the subject matter of the suit.
B. Except as otherwise provided in Article 2003, an action to annul a judgment on the grounds listed in this Article may be brought at any time.
Article 2003 provides:
A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.
These articles govern the bringing of an action for nullity of judgments.[4] By law, they present limitations to bringing the nullity action. Therefore, an unqualified statement that the action can be brought at any time is overly broad.
Relying on Weller v. Brown, 01-0314 (La.App. 1 Cir. 3/28/02), 813 So.2d 635, 638, Burger argues that even though the ground for nullity appears in the record, a separate, later action for nullity can be maintained because Article 2005 requires the ground for nullity to appear in the record and for the court to have considered it.[5] We do not find that the Weller case establishes that proposition of law. The law is clear that either of the conditions in Article 2005 may prohibit maintenance of a nullity action. As the supreme court recently reiterated in Thibodeaux v. Donnell, 08-2436 (La.5/5/09), 9 So.3d 120, 125, “it is clear that the statute provides for two different scenarios ... the disjunctive word ‘or’ is a clear, unambiguous term whose use between two provisions makes alternative events.” Although the supreme court was considering a different statute, the proposition of law is generic and applicable here.
| «Moreover, the Fourth Circuit Court of Appeal noted in New Orleans Redevelopment Authority, supra, that Paragraph two of Article 2005 limits a litigant’s right to bring a subsequent nullity suit, citing Weller v. Brown. “The jurisprudence has construed Article 2005 as providing two exclusive, disjunctive grounds for annulling a judgment that an appellate court has rendered; to wit: (i) when the ground for nullity was not in the record of appeal, or (ii) when the ground for nullity was not considered by the appellate court. Meldean’s Inc. v. Rivers, 410 So.2d 837, 839 (La.App. 3rd Cir.1982) (describing grounds as exclusive); Weller, 2001-0314 at p. 5, 813 So.2d at 638 (describing grounds as disjunctive).”
Burger also argues that because the March 29, 2007 judgment contains a substantive amendment, it is rendered absolutely null. We have reviewed a substantial body of jurisprudence wherein the use of the term “absolutely null” was used in describing a judgment found to be null, because it substantively altered a prior judgment without following the “proper *830 procedure.” We rely on the Tracy case here to recall that verbiage in a case may be prompted by the particular facts of that ease and is often dicta. In Tracy, supra, the supreme court noted that the two cases on which the district court relied were distinguishable, saying, “those two cases, while using strong language which the judge, no doubt, had good reason to believe was controlling, are contrary to the later jurisprudence and are otherwise distinguishable.” This case is distinguishable from other jurisprudence relying on La. C.C.P. art. 1951, in that two appellate courts have rejected Burger’s argument that the judgment is null. Therefore, La. C.C.P. art. 2005 is controlling in this matter.
Moreover, we also reject the argument that annulment is required under jurisprudence interpreting La. C.C.P. art. 1951. Louisiana Code of Civil Procedure article 1951 provides:
IflA final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
This procedural article specifies that a trial court may alter the phraseology, but not the substance, or correct errors of calculation in a judgment at any time, with or without notice, by the court on its own motion or on motion of any party. The article does not address what procedures are necessary to make a substantive change to a judgment, nor that a substantive amendment to a judgment renders the judgment a nullity.
It is well-established in the jurisprudence that judgments that add to or subtract from a judgment are substantive amendments that cannot be made without following the “proper procedure.” However, the proper procedure for a trial court to correct its own error has not been definitely established. In Lousteau v. K-Mart Corp., 03-1182 (La.App. 5 Cir. 3/30/04), 871 So.2d 618, writ denied 04-1027 (La.6/25/04), 876 So.2d 835, reconsideration denied, 04-1027 (La.9/03/04), 882 So.2d 593 this issue was considered by our wise brethren on the Fifth Circuit Court of Appeal. We find their discussion informative:
Initially, K-Mart urges that the court erred in vacating the December judgment, correctly urging that amendment or revision of a judgment is limited to correcting errors of calculation or phraseology. La. C.C.P. art. 1951. We are referred to a case in which our Supreme Court found that a judgment signed by the same judge, in similar circumstances, could not be altered, notwithstanding that it was signed in error. That case is distinguishable on its facts. In Bourgeois[6], the judgment in favor of the defendants was signed on November 6, 2001, with notice issued on November 29, 2001. Plaintiff received the notice and rather than move for new trial, filed for an appeal on January 15, 2002. On that same day, the court issued a second judgment in favor of the plaintiff, and later issued an order stating it had inadvertently signed the first judgment. In that case, unlike the matter before us, the time for granting of a new trial was long past. Under La. C.C.P. art. 1971, a new trial may be granted, upon contradictory motion of any party or by the court on its \wown motion, to all or any of the parties and on all or part of the issues. C.C.P. art. 1974 grants seven days, exclusive of holidays, in which a new trial may be granted. The recordation of the trial court that it signed the *831 first judgment in error, within the time frame permitted for granting a new trial, persuades us that the January judgment is not invalid as an impermissible amended judgment. Lousteau, 871 So.2d at 620,
The court then considered the appeal of the amended judgment.
It is unclear what the use of the term “absolutely” applied to null judgments is meant to convey. There are four effects that generally accompany the legal concept of absolute nullity. It is void ab initio; may not be confirmed; is impre-scriptible; and the nullity may be noticed by the court on its own motion. These principles derive from the Civil Code articles governing absolutely null contracts. See La. C.C. art. 2030, 2032, and 2033. Judgments that may be annulled are governed by other principles, not the least of which is the necessity for finality of judgments.
While the distinction between a null judgment and an absolutely null judgment is not apparent, it is clear that the provisions applicable to absolutely null contracts should not be grafted onto “absolutely null” judgments. Among the reasons this is true is the fact that the essence of a contract and of a judgment are antithetical. A contract is an agreement among parties that creates obligations. A judgment is a judicially imposed order obligating parties that are not in agreement.[7] A judgment found to have no legal effect may be designated as null, without the use of the term “absolutely,” which adds nothing to its legal effect and generates the confusion we find here.
Further, the legislature has not provided in either La. C.C.P. art. 1951 or in the articles on annulling judgments for an “absolutely null judgment.”[8] The law on nullity of judgments, as provided heretofore, clearly establishes that judgments are [ unot void ab initio, because one may lose the right to seek nullity under the circumstances provided in La. C.C.P. art. 2003. Also,' jurisprudence has established that the parties may consent to a substantive amendment of a judgment. See Villaume v. Villaume, 363 So.2d 448 (La.1978).
 We are also mindful that the primary objective of all procedural rules should be to secure to parties the full measure of their substantive rights. Fraternal Order of Police v. City of New Orleans, 02-1801 (La.11/8/02), 831 So.2d 897, 899. Rules of procedure exist for the sake of substantive law and to implement substantive rights, not as an end in and of itself. Unwired Telecom, 903 So.2d at 401. “Procedure should always be indeed the ‘handmaiden of justice.’ ” Id. A finding that the March 29, 2007 judgment was “absolutely null,” would effectively reverse the decision of the trial court by depriving Radcliffe of the damages the district court judge awarded after trial, and result in a judgment against Radcliffe for $850,000.00. This result, which Burger insists the jurisprudence requires, would be a perversion of justice and would make a mockery of the trial court.
The facts here are distinguishable from any of the cases we have reviewed, not only because of the fact that an appeal had been taken of the now challenged judgment, but also because the amended judgment conforms to written reasons issued *832 by the trial court after five days of trial and was corrected by the trial court within the seven days in which a new trial could be granted. Furthermore, Radcliffe did file a motion for a new trial in order to effect this change. Although the jurisprudence establishes that the correction made here was substantive, the trial court vacated the March 23, 2007 judgment because it contained a substantive error. The judgment signed by the trial court on March 29, 2007 expressly states that it is rendered to correct a clerical error in the earlier judgment. Burger contends that the fact that the trial court was correcting an error has no legal significance, relying on Bourgeois v. Kost, 02-2785 (La.5/20/03), 846 So.2d 692.
liaAs noted heretofore, the Fifth Circuit distinguished Bourgeois in Lousteau, for reasons that we find equally compelling. Further, the purposes for which the “harsh result” in Bourgeois is required do not exist in this case. No legitimate purpose is served by requiring the nullity of a substantively corrected judgment made by a trial court to correct its own error within the delays allowed for a new trial, or even for the delay in which one may file for a suspensive appeal because the judgment may not be executed until then. However, we do not directly address the issue of the proper procedure for a trial court to correct a substantive error because it is not necessary for a decision in this case.
CONCLUSION
We find that La. C.C.P. art. 2005 is controlling in this matter, and that the article prohibits maintaining an action for nullity. Therefore, the judgment decreeing that the March 29, 2007 judgment is not a nullity is affirmed. Costs are assessed to the appellant.
AFFIRMED.
KUHN and PARRO, JJ., concur and assign reasons.

.The suits also prayed for injunctive relief. The procedural background recited here is very abbreviated and only includes information necessary for an understanding of the appealed issue.

. Radcliffe 10, L.L.C. v. Zip Tube Systems of La., Inc. 07-1801, 07-1802 (La.App. 1 Cir. 8/29/08), 998 So.2d 107, rehearing denied in part, and granted in part.

. Radcliffe 10, L.L.C. v. Zip Tube Systems of La. Inc. 09-0024 (La.3/13/09), 5 So.3d 120.

. These articles were included in the Code of Civil Procedure when it was originally enacted in 1960 and are substantially similar to the source articles in the Louisiana Code of Practice. The Louisiana Code of Practice, Article 606, provided for vices of form for which a judgment could be annulled. The “vices of form” were substantially similar; however in addition to an incompetent person not represented as required by law, it included a married woman without the authorization of her husband or of the court.

. Apparently, Burger is suggesting that "considered it” means it was specifically raised as an error in the original appeal.

. Bourgeois v. Kost, 2002-2785 (La.5/20/03), 846 So.2d 692.

. Stipulated judgments are an exception to this rule.

. Louisiana Code of Civil Procedure article 3953 governing nullity of judgments in divorce actions does provide that judgments not rendered in accordance with certain requirements are absolutely null.