MCCLENDON, J.
*437 Appellants, Lynda O. Burger and Lauren E. Warren, seek reversal of a partial summary judgment that rendered Ms. Burger personally liable to Radcliffe 10, L.L.C. for the full amount of $150,000.00. This judgment was based on the determination that Ms. Burger had "disposed" of $150,000.00 in former community property in violation of LSA-C.C. art. 2357. The trial court certified the partial summary judgment as final under LSA-C.C.P. art. 1915B. For the following reasons, we conclude that the judgment was improvidently designated as final and dismiss the appeal.
FACTS AND PROCEDURAL HISTORY
This litigation has its roots in the sale of the assets of Zip Tube Systems of Louisiana, Inc.-a corporation in which Ronald G. Burger and Ms. Burger owned equal shares of stock-to Radcliffe 10, a limited liability company that James Radcliffe formed in 2002 specifically to purchase Zip Tube's assets and business operations. This court has issued prior opinions in that litigation. See Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc. , 07-1801, 07-1802 (La.App. 1 Cir. 8/29/08), 998 So.2d 107, amended on rehearing, 07-1801, 07-1802 (La.App. 1 Cir. 12/3/08), 22 So.3d 178, writs denied , 09-0011, 09-0024 (La. 3/13/09), 5 So.3d 119, 120; Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc., 09-0417, 09-0418 (La.App. 1 Cir. 12/29/09), 30 So.3d 825, writ denied, 10-0244 (La. 4/9/10), 31 So.3d 394. Effectively, Radcliffe 10 is a judgment creditor of Zip Tube, Burger Engineering, L.L.C., Ronald Burger, and Bryan Burger based on a final judgment for an amount in excess of $3,428,000.00.
On June 5, 2009, Radcliffe 10 filed the underlying "Petition for Money Judgment Based on Disposal of Community Property, For Revocatory Action, and To Seize Community Property to Satisfy Community Debt," naming Ms. Burger and her daughter, Lauren E. Warren, as defendants. Radcliffe 10 alleged that Ms. Burger donated former community funds-$150,000.00 from a certificate of deposit and an additional $55,765.08 in other funds-to her daughter. Radcliffe 10 sought a money judgment against Ms. Burger in the total amount of $205,765.08, plus legal interest from the date of those dispositions, in addition to costs and any and all applicable attorney's fees.
Ms. Burger filed an answer, generally denying many of the allegations in Radcliffe's petition. Ms. Burger also denied having made any donations to her daughter. Further, she asserted that any judgment rendered against Mr. Burger was not a community obligation.
During the underlying litigation, the Burgers sought a matrimonial agreement terminating their legal property regime and establishing a separate property regime. The matrimonial agreement and the judgment approving the matrimonial agreement were entered into and signed after Radcliffe 10's $3,428,000.00 judgment was rendered against Mr. Burger and the other defendants, but before Radcliffe 10's judgment was signed by the trial court. Thereafter, Radcliffe 10 filed suit to revoke the judgment approving the Burgers' matrimonial agreement as an absolute nullity. The trial court revoked the Burgers' judgment as void ab initio for failure to follow the procedural requirements of LSA-C.C. art. 2329. In a per curiam opinion, *438 this court upheld the trial court's judgment. See Radcliffe 10, L.L.C. v. Burger, 14-0347 (La.App. 1 Cir. 3/28/16), 191 So.3d 79 (per curiam ), writ granted, 16-00768 (La. 9/6/16), 204 So.3d 998, and rev'd, 16-0768 (La. 1/25/17), 219 So.3d 296.
After the Louisiana Supreme Court granted the Burgers' writ application to settle the question of nullity of a separation of property agreement the Burgers had entered, but before the supreme court ruled, Radcliffe 10 filed a motion for partial summary judgment.[1] In that motion, Radcliffe 10 alleged that Ms. Burger took $150,000.00 in community property and disposed of it by acquiring an undivided interest in real estate in East Baton Rouge Parish. In its statement of uncontested facts, Radcliffe 10 asserted:
On August 8, 2008, [Ms.] Burger purchased an undivided interest in a home located at municipal address 306 Pecan Meadow Drive, Baton Rouge, LA;
[Ms.] Burger's interest was purchased for $205,765.08. Of that amount, [Ms.] Burger judicially confessed that $150,000.00 was property of the former community between her and Ronald Burger. The remainder, $55,765.08, is presumed to be community. La. C.C. art. 2340 ; Cameron v. Rowland, 215 La. 177, 40 So.2d 1 (1948).
Radcliffe 10 noted that even if the motion for partial summary judgment were granted, the character of the remaining funds, i.e. $55,765.08, as community or separate property remained an issue for trial.
Ms. Burger opposed Radcliffe 10's motion, asserting that Radcliffe 10 could only seize former community property upon a showing that the judgment rendered against Ronald Burger and the other defendants was entered during the community and that the $150,000.00 was a community debt. Moreover, Ms. Burger asserted that she had not disposed of the subject funds, whether community or separate, but applied them to the purchase price of a home jointly titled in her and Ms. Warren's name, which was subsequently sold in 2013. Ms. Burger contended that there was no disposal of former community funds within the meaning of LSA-C.C. article 2357 since the equity interest in the home was in Radcliffe 10's reach before it was sold.[2]
Following argument and review of the evidence submitted in favor of and in opposition to Radcliffe 10's motion for partial summary judgment, the trial court signed a judgment on April 6, 2017 that granted *439 the motion and rendered judgment in favor of "Radcliffe 10, L.L.C. and against Lynda O. Burger recognizing her personal liability to Radcliffe 10, L.L.C. in the full amount of ONE HUNDRED FIFTY THOUSAND AND NO/100 ($150,000.00) DOLLARS, together with legal interest from date of judicial demand and costs to be determined by the court on a separate motion." The trial court noted that its ruling did not resolve all issues, stating in its oral reasons for judgment:
What was the classification of the remaining fifty-five thousand, seven hundred and something? Because I couldn't determine [in previously denying Ms. Burger's motion for summary judgment[3] ] whether that was separate property, whether it was community property, whether it was mixed. And my notes indicate, I went through [Ms. Burger's] deposition and she kind of said: well, I put it in this account; I put it in that account; I wasn't sure how much; it was an employment account. I couldn't make a determination from the record. And since there was no way to determine, I didn't think summary judgment was appropriate. However, if [Radcliffe 10] had filed a cross motion for summary judgment on the hundred fifty, I would have granted it at that time. Now, [Radcliffe 10 is] seeking personal liability only as to the one fifty; again, an amount that Ms. Burger admits was former community, which was used to purchase a home for her daughter. I do think that it meets the definition of disposed. And I think that, under [LSA-R.S.] 23:57, that she now becomes liable for that amount. So, the court will grant the partial motion for summary judgment as to one fifty, acknowledged community only, with the remaining issue for trial being the disposition of the other fifty-five thousand, seven hundred and some odd dollars.
The trial court designated the judgment as final under LSA-C.C.P. art. 1915B(1), finding that there was no just reason for delay. The trial court did not provide reasons for the certification.
Ms. Burger has appealed, assigning the following as error:
1. The district court erred in granting the partial summary judgment because Radcliffe 10 had been dissolved by affidavit, effective June 21, 2016, pursuant to LA.REV.STAT. 12:1335.1, and thus had no right to a judgment in its favor. This error is the subject of a peremptory exception of no right of action, filed contemporaneously with this brief.
2. The district court erred in holding [Ms.] Burger personally liable for $150,000. Lynda Burger raised genuine issues of material fact and law in her answers as well as her affidavit in opposition to Radcliffe 10's motion as to whether Ron's $3.4 million judgment debt to Radcliffe 10 is entitled to the presumption of community under Civil Code Article 2360, whether Radcliffe 10 is entitled to the presumption of community under Civil Code Article 2361, and whether the judgment debt was the result of an intentional wrong not perpetrated for the benefit of the community or did not in fact benefit the community under Civil Code Article 2363.
3. The district court erred in holding that [Ms.] Burger had "disposed" of former community property, when *440 she used the proceeds of flood insurance to purchase an undivided equity interest in a new home in Baton Rouge, equal in value to insurance funds.
DISCUSSION
The judgment before us was certified as a final judgment in accordance with LSA-C.C.P. Art. 1915B. Before we consider the merits of the appeal, we must determine whether the judgment is properly certified. Although the trial court designated the judgment as being final and appealable under Article 1915B, that designation is not determinative of this court's jurisdiction. Van ex rel. White v. Davis, 00-0206 (La.App. 1 Cir. 2/16/01), 808 So.2d 478, 480. Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716 (La.App. 1 Cir. 4/30/03), 867 So.2d 715, 717. If no reasons for the certification are given but some justification is apparent from the record, the appellate court should make a de novo determination of whether the certification was proper. R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La. 3/2/05), 894 So.2d 1113, 1122.
Historically, our courts have had a policy against multiple appeals and piecemeal litigation. Article 1915B attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Thus, in considering whether a judgment has been properly designated as final and appealable pursuant to Article 1915B, a trial court must take into account judicial administrative interests as well as the equities involved. Id. ; Templet v. State of Louisiana, Department of Public Safety and Corrections, 05-1903 (La.App. 1 Cir. 11/3/06), 951 So.2d 182, 185. Some of the factors a trial court should take into account in making an Article 1915B certification are the relationship between the adjudicated and unadjudicated claims; the possibility that the need for review might or might not be mooted by future developments in the trial court; the possibility the reviewing court might be obliged to consider the same issue a second time; and miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. R.J. Messinger, Inc., 894 So.2d at 1122. However, the overriding inquiry for the trial court is whether there is no just reason for delay. Id. at 1122-23.
The April 6, 2017 judgment at issue addresses less than all the claims insofar as it addresses only the $150,000.00 sum applied to the purchase of the immovable property. However, the judgment does not address the remaining $55,765.08 and whether that sum is community property that can be seized to pay the judgment debt due Radcliffe 10. As such, the judgment is not a final judgment for purposes of an immediate appeal under the provisions of Article 1915A. Therefore, this court's jurisdiction depends upon whether the judgment was properly designated and certified as a final judgment pursuant to Article 1915B(1). See also LSA-C.C.P. Art. 1911B and 2083.
Ms. Burger asserts that the "unadjudicated claim" is essentially a non-issue because those funds are separate inheritance funds that Radcliffe 10 has acknowledged might not be worth pursuing. She contends that the funds at issue in the current appeal are separate and distinct from the unadjudicated claim. She further argues that there is no possibility that future developments in the trial court will moot the need for this court's review of the judgment, *441 nor will this court be in a position to revisit the discrete and particular issue of the insurance proceeds a second time. Moreover, Ms. Burger avers that Radcliffe 10 has already sought to make the judgment executory in St. Tammany Parish in an effort to expedite garnishment proceedings against her such that the underlying judgment is effectively a final judgment rendered against her.
Although Ms. Burger focuses on the nature of the two underlying funds, she asserts that neither of the funds can be seized because issues remain regarding whether the intent and motives for the actions constituting "unfair trade practices" for which the judgment against Zip Tube and Mr. Burger was entered were perpetrated for the benefit of the community. In effect, Ms. Burger contends that the judgment rendered against Mr. Burger and Zip Tube is not a community obligation and that therefore, neither of the funds can be seized by Radcliffe 10.
Our law disfavors piecemeal litigation. R.J. Messinger, Inc., 894 So.2d at 1122. Even were we to conclude that issues remain regarding whether the judgment rendered against Mr. Burger was a community obligation and reverse the partial summary judgment rendered in Radcliffe 10's favor, we cannot render judgment in favor of Ms. Burger given that we do not have a cross motion for summary judgment. As such, this court may have to revisit that issue a second time after a final judgment is rendered. Moreover, while Ms. Burger claims that the issue remaining for trial may not be worth pursuing, that issue is still unresolved, and Radcliffe 10 has not dismissed that claim.
Additionally, we note that Ms. Burger has filed an exception with this court raising the objection of no right of action, asserting that the district court erred in granting the partial summary judgment because Radcliffe 10 had been dissolved by affidavit, effective June 21, 2016. Radcliffe 10 has opposed that exception, or alternatively, sought to substitute James Radcliffe, as sole member of the limited liability company, as the proper party plaintiff. This exception was never presented to the trial court.
Given the nature of the claims and the procedural posture of this case, we are constrained to find that addressing the issues at this time would promote piecemeal appeals. Accordingly, on our de novo review, we cannot conclude that there is no just reason for delay. Therefore, the designation of finality does not meet the R.J. Messinger, Inc. requirements, and we dismiss the appeal.
Ms. Burger can seek appellate relief once a final judgment has been rendered and all issues are properly before this court on appeal. Further, we dismiss Ms. Burger's exception raising the objection of no right of action and Radcliffe 10's alternative motion to substitute proper party plaintiff.
CONCLUSION
For the foregoing reasons, we dismiss Ms. Burger's appeal and her exception raising the objection of no right of action. We also dismiss Radcliffe's 10's alternative motion to substitute proper party plaintiff. Costs of this appeal are to be split equally between the parties.
APPEAL DISMISSED; EXCEPTION OF NO RIGHT OF ACTION DISMISSED; ALTERNATIVE MOTION TO SUBSTITUTE PROPER PARTY PLAINTIFF DISMISSED.

The writ application was granted on September 6, 2016. Thereafter, the Louisiana Supreme Court upheld the matrimonial agreement entered into by the Burgers that terminated the legal regime and created a separate property regime, See Radcliffe 10, L.L.C. v. Burger, 16-0768 (La. 1/25/17), 219 So.3d 296, 303.

Louisiana Civil Code article 2357 provides:
An obligation incurred by a spouse before or during the community property regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation. The same rule applies to an obligation for attorney's fees and costs in an action for divorce incurred by a spouse between the date the petition for divorce was filed and the date of the judgment of divorce that terminates the community regime.
If a spouse disposes of property of the former community for a purpose other than the satisfaction of community obligations, he is liable for all obligations incurred by the other spouse up to the value of that community property.
A spouse may by written act assume responsibility for one-half of each community obligation incurred by the other spouse. In such case, the assuming spouse may dispose of community property without incurring further responsibility for the obligations incurred by the other spouse.

Ms. Burger had previously filed a motion for partial summary judgment, asserting that she had not disposed of $150,000.00 in former community funds when she applied them toward the purchase price of the real estate in East Baton Rouge Parish.