STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 1094

RADCLIFFE 10, L.L.C.

VERSUS

LYNDA O. BURGER AND LAUREN E. WARREN

Judgment Rendered: **JUL 2 1 2020**

\* \* \* \* \* \*

On appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number C590185

Honorable William A. Morvant, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Joseph L. McReynolds<br>Raymond C. Lewis<br>New Orleans, LA | Counsel for Defendant/Appellant<br>Lynda O. Burger |
| Ross Dooley<br>Baton Rouge, LA | |
| Craig J. Robichaux<br>Mandeville, LA | Counsel for Plaintiff/Appellee<br>Radcliffe 10, L.L.C. |
| Alicia M. Bendana<br>Mark S. Goldstein<br>New Orleans, LA | |

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY, AND HIGGINBOTHAM, JJ.

**GUIDRY, J.**

Appellant, Lynda O. Burger, seeks a reversal of a partial summary judgment that rendered her personally liable in the amount of $150,000.00 to Appellee, Radcliffe 10, L.L.C. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

This litigation has its roots in the sale of the assets of Zip Tube Systems of Louisiana, Inc., a corporation in which Mr. Ronald G. Burger and his wife, Ms. Burger, the appellant herein, owned equal shares of stock. This court has issued prior opinions in the litigation.[1] Essentially, Zip Tube Systems sold its assets to Radcliffe 10, a limited liability company that James Radcliffe formed in 2002 specifically to purchase Zip Tube's assets and business operations. Based on a final judgment signed on March 29, 2007, for an amount in excess of three million dollars, Radcliffe 10 is a judgment creditor of Zip Tube, Burger Engineering, L.L.C., Ronald Burger, and Bryan Burger.[2]

On June 5, 2009, Radcliffe 10 filed a "Petition for Money Judgment Based on Disposal of Community Property, for Revocatory Action, and to Seize Community Property to Satisfy Community Debt." Named as defendants in its petition were Ms. Burger and her daughter, Lauren E. Warren. Radcliffe 10 alleged that Ms. Burger donated former community property—$150,000.00 from a certificate of deposit and $55,765.08 from other funds—to Lauren. Radcliffe 10

---

[1] See Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc., 07-1801 (La. App. 1st Cir. 8/29/08), 998 So. 2d 107, amended on rehearing, 07-1801 (La. App. 1st Cir. 12/3/08), 22 So. 3d 178, writs denied, 09-0011, 09-0024 (La. 3/13/09), 5 So. 3d 119, 120; Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc., 09-0417 (La. App. 1st Cir. 12/29/09), 30 So. 3d 825, writ denied, 10-0244 (La. 4/9/10), 31 So. 3d 394; Radcliffe 10, L.L.C. v. Burger, 17-0967 (La. App. 1st Cir. 5/9/18), 251 So. 3d 435.

[2] The lawsuit was filed in 2003; Ms. Burger was not a party to the lawsuit.

2

sought a money judgment against Ms. Burger and Lauren in the amount of $205,765.08, plus legal interest and costs.[3]

In response to Radcliffe 10's petition, Ms. Burger filed an answer, generally denying the allegations in the petition, but admitting that subsequent to Hurricane Katrina, she purchased a CD in the amount of $150,000.00 with funds obtained pursuant to a flood damage claim on a home in New Orleans.[4] Ms. Burger denied having made any donations to her daughter. She further asserted that any judgment rendered against her husband, Mr. Burger, was not a community obligation.[5]

In August of 2011, Ms. Burger filed a motion for partial summary judgment, which was denied.[6] Later, on September 19, 2016, Radcliffe 10 filed a motion for partial summary judgment. Radcliffe 10, in its motion, alleged that Ms. Burger disposed of $150,000.00 in community property in violation of La. C.C. art. 2357, and in doing so, Ms. Burger had become personally liable to Radcliffe 10.

Ms. Burger opposed Radcliffe 10's motion, asserting that Radcliffe 10 could only seize former community property upon a showing that the judgment rendered against Mr. Burger and the other defendants was entered during the community and that the $150,000.00 was a community debt. Ms. Burger asserted that she had not disposed of the subject funds, whether community or separate, but applied

---

[3] On May 20, 2015, Radcliffe 10 amended its petition seeking the money judgment solely against Ms. Burger.

[4] Lauren also filed an answer denying the allegations in Radcliffe 10's petition.

[5] During the litigation proceedings, the Burgers sought a matrimonial agreement terminating their legal matrimonial regime of community property and establishing a separate property regime, which was upheld by the Louisiana Supreme Court. (R. 1/11) See Radcliffe 10, L.L.C. v. Burger, 16-0768 (La. 1/25/17), 219 So. 3d 296. (R. 1/11) The matrimonial agreement and the judgment approving the matrimonial agreement were entered into and signed on May 8, 2006, after Radcliffe 10's judgment in an amount in excess of three million was rendered against Mr. Burger and the other defendants (the trial court issued its reasons for judgment on June 24, 2005), but before the judgment was signed by the trial court on March 29, 2007.

[6] Ms. Burger asserted that she had not disposed of community funds and was therefore entitled to summary judgment.

3

them to the purchase price of a home jointly titled in her and her daughter Lauren's name, which was subsequently sold in 2013. Ms. Burger contended that there was no disposal of the former community funds within the meaning of La. C.C. art. 2357, since the equity interest in the home was within Radcliffe 10's reach before it was sold.

Following argument and review of the evidence submitted in favor of and in opposition to Radcliffe 10's motion for partial summary judgment, the trial court signed a judgment on April 6, 2017, granting the motion and rendering judgment in favor of Radcliffe 10.[7] Ms. Burger then sought an appeal of the April 6, 2017 judgment, and also filed an exception of no right of action in this court. That appeal was dismissed for want of jurisdiction; the exception was also dismissed. See Radcliffe 10, L.L.C v. Burger, 17-0967 (La. App. 1st Cir. 5/29/18), 251 So. 3d 435.

On June 25, 2018, Ms. Burger filed in the trial court an exception of no right of action and motion to vacate the April 6, 2017 judgment, which was denied on November 26, 2018. Thereafter, by a judgment signed on May 17, 2019, the remaining claims brought by Radcliffe 10 against Ms. Burger and her daughter Lauren were dismissed, thereby concluding and disposing of all claims and issues between the parties. Ms. Burger then brought the instant appeal challenging the April 6, 2017 judgment and assigning the following as error.

> 1. The district court erred in granting the April 6, 2017 partial summary judgment because Radcliffe 10 had been dissolved by affidavit, effective June 21, 2016, pursuant to LA. REV. STAT. 12:1335.1, and thus had no right to a judgment in its favor or in its name.

---

[7] Prior to the signing of the April 6, 2017 judgment, Ms. Burger objected to the circulated judgment, asserting 1) that the judgment was not final because it had not been established whether the judgment was a community debt, and 2) that Radcliffe 10 had no right of action to move for partial summary judgment because the company had been dissolved by affidavit on June 21, 2016.

2. The district court erred in refusing to grant either [Ms.] Burger's peremptory exception of no right of action or her motion to vacate the judgment, due to the dissolution of Radcliffe 10's corporate existence.

3. The district court erred in granting James Radcliffe leave to substitute as the proper legal successor, to the extent the order give[s] retroactive effect to Mr. Radcliffe's substitution as the party to whom the April 6, 2017 judgment applied.

4. The district court erred in holding [Ms.] Burger personally liable for $150,000 in the absence of any evidence presented in support of Radcliffe 10's motion that the $3.4 million judgment debt that Ronald Burger owed Radcliffe 10 was a community obligation under Civil Code Article 2360. Radcliffe 10 was not entitled to the presumption of community under Civil Code Article 2361 because the $3.4 million judgment debt was based on an intentional wrong. It was therefore Radcliffe 10's burden to present evidence with its motion that the judgment was a community obligation, in accordance with Civil Code Article 2363, and it presented none.

5. The district court erred in holding that [Ms.] Burger had "disposed" of former community property, when she used the proceeds of flood insurance to purchase an undivided equity interest in a new home in Baton Rouge, equal in value to insurance funds.

## STANDARD OF REVIEW

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. M/V Resources LLC v. Louisiana Hardwood Products LLC, 16-0758, p. 8 (La. App. 1st Cir. 7/26/17), 225 So. 3d 1104, 1109, writ denied, 17-1748 (La. 12/5/17), 231 So. 3d 624. A motion for summary judgment is properly granted if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); M/V Resources LLC, 16-0758 at p. 8, 225 So. 3d at 1109. In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. M/V Resources LLC, 16-0758 at p. 9, 225 So. 3d at 1109.

5

## DISCUSSION

We begin our discussion with Ms. Burger's fourth and fifth assignments of error and address them together. In these assignments of error, Ms. Burger essentially contends that the trial court erred in holding her personally liable to Radcliffe 10 in the amount of $150,000.00 because Radcliffe 10 was not entitled to the presumption of community when the judgment debt was based on an intentional wrong. Ms. Burger contends that Radcliffe 10 failed to present evidence that the debt was a community obligation, and that the $150,000.00 was not "disposed of" within the meaning of La. C.C. art. 2357. Radcliffe 10, in its motion for partial summary judgment, argued that the debt was a community obligation, and that it was entitled to pursue assets of the former community.

An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. La. C.C. art. 2360. Except for separate obligations delineated in La. C.C. art. 2363, all obligations incurred by a spouse during the existence of the community property regime are presumed to be community obligations. La. C.C. art. 2361. Louisiana Civil Code Article 2363 provides in pertinent part that an obligation resulting from an intentional wrong not perpetrated for the benefit of the community, or an obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse, is a separate obligation.[8] Once it is shown that an obligation arose during the existence of the community, the presumption set forth in Article 2361 may be rebutted only by facts proving the obligation to be separate as defined in Article 2363. Manno v. Manno, 01-2138, p. 4 (La. App. 1st Cir. 10/2/02), 835 So. 2d 649, 651. Additionally, the presumption is rebuttable upon

[8] We conduct our analysis herein under the version of La. C.C. art. 2363 that was in existence at the time Zip Tube System of Louisiana, Inc.'s assets were sold to Radcliffe 10.

6

proof by clear and convincing evidence that the debt was not incurred for the benefit of the community. In re Succession of Moss, 00-62, p. 5 (La. App. 3rd Cir. 6/21/00), 769 So. 2d 614, 618, writ denied, 00-2834 (La. 12/8/00), 776 So. 2d 462.

In this matter, the trial court was entitled to apply the presumption of community under Article 2361, as the obligation resulting from Mr. Burger's dealings with Radcliffe 10 arose during the existence of the community property regime. See Lafayette Ins. Co. v. Pennington, 42,434, p. 4 (La. App. 2d Cir. 9/19/07), 966 So. 2d 136, 138. Thereafter, it was incumbent upon Ms. Burger, under La. C.C. art 2363, to show that Mr. Burger's dealings with Radcliffe 10 were an intentional wrong that did not benefit the community. See Sims v. Sims, 28,470, p. 2 (La. App. 2d Cir. 6/26/96), 677 So. 2d 663, 665. Ms. Burger, however, in her presentation to the trial court, failed to rebut the presumption of community, providing no evidence that Mr. Burger's dealings with Radcliffe 10 were not for the common interests of the spouses and did not benefit the community. The record is devoid of any such evidence. Accordingly, on this record, Ms. Burger is unable to surmount the presumption of a community obligation.

Having so found, we note that La. C.C. art. 2357 provides for the satisfaction of an obligation after the termination of a regime. Article 2357 provides in part that an obligation incurred by a spouse before or during the community property regime, may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation. Article 2357 additionally provides that if a spouse disposes of property of the former community for a purpose other than the satisfaction of community obligations, that spouse is liable for all obligations incurred by the other spouse up to the value of that community property.

7

Here, while Ms. Burger argues that the trial court erred in finding that she disposed of former community funds, Ms. Burger conversely admitted to the trial court that she used the former community property to purchase a new home with her daughter—that is, she used the subject $150,000.00 for a purpose other than satisfying a community obligation.[9] It is therefore our opinion that Ms. Burger disposed of the former community property, $150,000.00, within the meaning of La. C.C. art. 2357. She is now personally liable in that amount. Accordingly, we find no merit in these assignments of error.

Finally, we decline to consider Ms. Burger's first, second, and third assignments of error, as the issues presented for review are not properly before us.[10] A review of the record herein reveals that the issue of Radcliffe 10's corporate dissolution was not presented to the trial court for consideration prior to the determination of the April 6, 2017 partial summary judgment and is therefore not subject to review by this court. See Uniform Rules-Courts of Appeal, Rule 1-3. Furthermore, we note that Ms. Burger failed to appeal the November 26, 2018 judgment, wherein she raised the issue of corporate dissolution and wherein the rulings on the exception of no right of action, motion to vacate the April 6, 2017 judgment, and motion for leave were issued. See La. C.C.P. arts. 2121 and 2088; see also Uniform Rules-Courts of Appeal, Rule 2-12.4(B)(1).

## CONCLUSION

For the above and foregoing reasons, we affirm the April 6, 2017 partial summary judgment against Lynda O. Burger and in favor of Radcliffe 10, L.L.C. All costs of this appeal are assessed to the appellant, Lynda O. Burger.

**AFFIRMED.**

---

[9] Ms. Burger made admissions regarding the subject $150,000.00 and purchase of a new home in her briefs to the court.

[10] Appellate courts have the duty to examine subject matter jurisdiction *sua sponte,* even when the parties do not raise the issue. Noyel v. City of St. Garbriel, 15-1890, p. 5 (La. App. 1st Cir. 9/1/16), 202 So. 3d 1139, 1142, writ denied, 16-1745 (La. 11/29/16), 213 So. 3d 392.

8