# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2022 CA 0832

## CROSSTEX ENERGY SERVICES, LP, CROSSTEX LIG, LLC, and CROSSTEX PROCESSING SERVICES, LLC

### VERSUS

## TEXAS BRINE COMPANY, LLC, et al

*Judgment Rendered:*   **MAR 1 6 2023**

* * * * * * * *

**Appealed from the**
**23rd Judicial District Court**
**In and for the Parish of Assumption**
**State of Louisiana**
**Case No. 34,202**

**The Honorable Thomas J. Kliebert, Jr., Ad Hoc, Judge Presiding**

* * * * * * * *

| | |
|---|---|
| Leopold Z. Sher | Attorneys for Defendant/Third- |
| James M. Garner | Party Plaintiff/Appellant |
| Peter L. Hilbert, Jr. | Texas Brine Company, LLC |
| Darnell Bludworth | |
| Jeffrey D. Kessler | |
| Christopher T. Chocheles | |
| New Orleans, LA | |
| | |
| Robert Percy, III | |
| Travis J Turner | |
| Gonzales, LA | |
| | |
| Uylsses Gene Thibodeaux | |
| Lake Charles, LA | |
| | |
| Roy C. Cheatwood | Attorneys for Defendant/Appellee |
| Kent A. Lambert | Legacy Vulcan, LLC |
| Adam B. Zuckerman | |
| Leopoldo J. Yanez | |
| Colleen C. Jarrott | |
| Matthew C. Juneau | |
| Lauren Brink Adams | |
| New Orleans, LA | |

* * * * * * * *

**BEFORE: THERIOT, LANIER, AND WOLFE, JJ.**

**THERIOT, J.**

This appeal is one of many arising from the Bayou Corne sinkhole which developed on August 3, 2012, in Assumption Parish, Louisiana. Herein, Texas Brine Company, LLC ("Texas Brine") appeals the trial court's judgment granting Legacy Vulcan, LLC f/k/a Legacy Vulcan Corp. and/or Vulcan Materials Company's ("Legacy Vulcan") Motion for Partial Summary Judgment Dismissing Texas Brine's Claims for Double Recovery of Insured Losses and Liabilities (the "Motion"). For the following reasons, we find the underlying judgment does not meet the requirements of a final, appealable judgment pursuant to **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, that this court lacks subject matter jurisdiction, and, therefore, we dismiss this appeal.

## FACTS AND PROCEDURAL HISTORY[1]

In brief, the relevant history between Texas Brine and Legacy Vulcan dates back to 1975, when Texas Brine, by way of a "Salt Lease," secured the right to produce salt from a 40-acre tract of land in Assumption Parish, commonly referenced by the parties as the "North 40." Within a year of obtaining this right, Texas Brine entered into a series of interdependent contracts with Legacy Vulcan, including an "Assignment of Salt Lease," under which Texas Brine purportedly assigned all of its rights, title, and interest as lessee in and under the Salt Lease to Legacy Vulcan, and Legacy Vulcan assumed all obligations of Texas Brine as lessee in and under the Salt Lease; a "Construction Contract and Facilities Lease," under which Texas Brine was to site, drill, and construct certain wells, related facilities, and a pipeline on the North

---

[1] The facts and procedural history of this litigation have been extensively delineated and discussed over the many opinions promulgated by this court. As the issues addressed in this particular opinion concern, in part, the contractual obligations between Texas Brine and Legacy Vulcan as found in the numerous agreements entered into by them, we rely heavily on this court's prior opinions of **Florida Gas Transmission Company, LLC v. Texas Brine Company, LLC**, 2022-0004 (La. App. 1st Cir. 8/3/22), 348 So.3d 93, writ denied, 2022-01344 (La. 12/20/22), 352 So.3d 85 and **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2022-0738 (La. App. 1st Cir. 12/29/22), ___ So.3d ___, 2022 WL 17983139, for a succinct summary of the relevant facts and procedural history herein.

2

40 and lease certain property to Legacy Vulcan; and, an "Operating and Supply Agreement," under which Texas Brine would operate facilities it constructed on the North 40 in order to produce and deliver a certain quantity and quality of brine to be used by Legacy Vulcan in its chloralkali business at its facility in Geismar, Louisiana. The Operating and Supply Agreement further provided that Texas Brine maintain, repair, and at all times, keep the facilities leased by it to Legacy Vulcan in good and safe operating condition. In turn, Legacy Vulcan was obliged to pay Texas Brine for its services. Each of the above agreements provided certain other specific rights to and obligations owed by the parties.

Around 2000, Texas Brine and Legacy Vulcan entered into a number of amended agreements to the Salt Lease, Construction Contract and Facilities Lease (the "Amended Facilities Lease"), and Operating and Supply Agreement (the "Amended Operating Agreement"), each contract dependent upon the other contracts, for the purpose of continuing and expanding the brine mining and exploration on the North 40. The general principles underlying these agreements remained the same – Texas Brine would continue to produce and deliver certain quantities and qualities of brine to Legacy Vulcan. Texas Brine further obliged itself to maintain, repair, and at all times, keep these facilities in good and safe operating condition, and comply with, perform, and fulfill all obligations of Legacy Vulcan to Texas Brine under the Amended Facilities Lease between the parties, with respect to the maintenance, operation, and preservation of the leased premises. Legacy Vulcan, in turn, obliged itself to pay for Texas Brine's services.

Pertinent herein, in each of these interdependent documents, Texas Brine and Legacy Vulcan agreed to various contractual provisions regarding insurance, prospective future losses, subrogation of rights, etc. Specifically, in Section 12.4 of the Amended Operating Agreement, the parties agreed:

3

Insurance. During the term of this Agreement, Texas [Brine] shall take out, or cause to be taken out, and shall maintain liability and other insurance with respect to its operation of the Leased Premises, insuring against such risks as are customarily insured against by businesses similarly situated and operating like properties, including, but not necessarily limited to the following insurance: [...] (d) [c]ommercial general liability insurance with limits of $5,000,000, combined single limit, including contractual liability coverage which shall specifically cover the indemnity of this Agreement, products/completed operations and XCU (explosion, collapse and underground) coverages.

Related thereto, and signed in view of the Amended Operating Agreement, Section 7.4 of the Amended Facilities Lease stated:

Mutual Waiver of Subrogation Rights. Whenever (a) any loss, cost, damage or expense resulting from fire, explosion or any other liability, casualty or occurrence is incurred by either of the parties to this Lease in connection with the Leased Premises and (b) such party is then covered in whole or in part by insurance with respect to such loss, cost, damage or expense, then the party so insured hereby releases the other party from any liability it may have on account of such loss, cost, damage or expense to the extent of any amount recovered by reason of such insurance and waives any right of subrogation which might otherwise exist in or accrue to any person on account thereof, provided that such release of liability and wavier of the right of subrogation shall not be operative in any case where the effect thereof is to invalidate such insurance coverage or increase the cost thereof (provided that in the case of increased cost the other party shall have the right, within thirty (30) days following written notice, to pay such increased cost, thereupon keeping such release and waiver in full force and effect).

The Phase 1 liability trial was held in September and October 2017, for the purpose of determining what caused the sinkhole to form and which parties were at fault under any theory of law for causing the formation of the sinkhole. **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-1249 (La. App. 1st Cir. 12/30/20), 317 So.3d 715, 725, writs denied, 2021-00382, 2021-00386 (La. 6/8/21), 317 So.3d 323. The trial court found both Texas Brine and Legacy Vulcan at fault. This court affirmed the judgment on appeal, finding that Legacy Vulcan failed as a prudent mineral lessee, and Texas Brine failed to prudently operate the North 40. **Id.** at 757-58.

Thereafter, the parties began the next phase of litigation, Phase 2, which encompassed all remaining incidental demands and damage issues, but not including insurance issues or attorney's fees. To that end, Legacy Vulcan filed numerous motions for partial summary judgment asserting various arguments regarding Texas Brine's contractual claims against Legacy Vulcan. One such motion was Legacy Vulcan's instant Motion, filed on November 16, 2021. Legacy Vulcan's lead argument was that, based on Section 7.4 of the Amended Facilities Lease, and due to the obligation to procure insurance from Section 12.4 of the Amended Operating Agreement, that Texas Brine "*expressly and unequivocally* released [Legacy] Vulcan from any such losses or liabilities." (emphasis in original). Therefore, as argued by Legacy Vulcan, Texas Brine's "attempt to recover against [Legacy] Vulcan for insured losses for which [Texas Brine] has already recovered under the 2012 Insurance Tower fails as a matter of law." Alternatively, Legacy Vulcan argued the collateral source rule, by operation of law, does not apply such that Texas Brine should not recover monies from Legacy Vulcan it already received from its own insurance companies in recompence for payments Texas Brine previously made in sinkhole response costs.

The trial court held a hearing on Legacy Vulcan's Motion on December 16, 2021, at which time the trial court took the matter under advisement. On January 18, 2022, the trial court signed a judgment, stating, in pertinent part:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that [Legacy] Vulcan's Motion for Partial Summary Judgment Dismissing Texas Brine's Claims for Double Recovery of Insured Losses and Liabilities is **GRANTED**, as this Court finds that Texas Brine cannot recover from [Legacy] Vulcan for its losses that have been paid by Texas Brine's insurers as a matter of law.

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Judgment is designated as a final judgment in accordance with Louisiana Code of Civil Procedure Article 1915, as the Court finds that there is no just reason for delay.

5

Additionally, in its written reasons for judgment, the trial court specifically noted that to permit "Texas Brine, the tortfeasor most culpable for the sinkhole, to reap the windfall of a double recovery for insured liabilities engendered by its own fault undermines the public policy of tort deterrence and is impermissible as a matter of law." Moreover, the trial court relied on Section 7.4 of the Amended Facilities Lease to support its conclusion that, "pursuant to the parties' contract, Texas Brine cannot recover against [Legacy] Vulcan for insured losses for which Texas Brine has already recovered."

## ASSIGNMENTS OF ERROR

Texas Brine assigns the following as error:

(1) The [trial] court legally erred in granting [Legacy Vulcan's Motion] because the collateral source rule applies to Texas Brine's monies received from its insurers. [Legacy] Vulcan should have to pay its allocated fault based on the *entire* amount of sinkhole response costs, not just Texas Brine's unreimbursed sinkhole response costs. (emphasis in original).

(2) The [trial] court legally erred in granting [Legacy Vulcan's Motion] because the existence of disputed issues of material fact should have precluded the [trial court's] finding that, under the Amended Facilities Lease, Texas Brine released claims against [Legacy] Vulcan for losses, costs, damages, or expenses covered by insurance.

## APPEALABILITY OF PARTIAL SUMMARY JUDGMENT

Appeal is the exercise of the right of a party to have a judgment of a trial court reversed, modified, set aside, or reversed by an appellate court. La. Code Civ. P. art. 2082. However, this court's appellate jurisdiction extends only to "final judgments," those that determine the merits in whole or in part. See La. Code Civ. P. arts. 1841 & 2083(A). As such, appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. See **Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.**, 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So.3d 1044, 1046 (en banc). Therefore, as the judgment on Legacy

6

Vulcan's Motion certifies and designates it as final a partial summary judgment, we must first determine whether this was proper.

A trial court may render summary judgment dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the grant of summary judgment does not dispose of the entire case as to that party or parties. La. Code Civ. P. art. 966(E). A partial summary judgment rendered under La. Code. Civ. P. art. 966(E) may be immediately appealed during ongoing litigation only if the trial court has properly designated it as a final judgment after an express determination that there is no just reason for delay. See La. Code Civ. P. art. 1915(B)(1). Although the trial court may designate a judgment as being final and appealable under Article 1915(B), that designation is not determinative of this court's jurisdiction. **Radcliffe 10, L.L.C. v. Burger**, 2017-0967 (La. App. 1st Cir. 5/29/18), 251 So.3d 435, 440, *citing*, **Van ex rel. White v. Davis**, 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So.2d 478, 480. If the trial court gives no reasons for the certification, but some justification is apparent from the record, the appellate court should make a *de novo* determination of whether the certification was proper. **Messinger**, 894 So.2d at 1122; **Asay v. Safeco Insurance Company of Oregon**, 2020-0852 (La. App. 1st Cir. 4/16/21), 323 So.3d 395, 398.

Under **Messinger**, the following list of non-exclusive factors are to be considered in determining whether a partial judgment should be certified as final: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (4) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. **Messinger**, 894 So.2d at 1122; **Asay**, 323 So.3d at 399. Moreover, our courts have a policy against multiple appeals and piecemeal litigation,

7

with a goal of promoting judicial efficiency and economy in the administration of justice. Article 1915(B) attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the need of the parties. Thus, in considering whether a judgment has been properly designated as final and appealable pursuant to Article 1915(B), a trial court must take into account judicial administrative interests as well as the equities involved. **Asay,** 323 So.3d at 398, *citing,* **Messinger,** 894 So.2d at 1122.

Applying these precepts on our *de novo* review, we conclude the January 18, 2022 partial summary judgment on Legacy Vulcan's Motion does not meet the requirements of a final, appealable judgment under La. Code Civ. P. art. 1915(B)(1). The underlying Motion and judgment relate to multiple contractual clauses and provisions, of which the parties relate to this court are the subject of Phase 2, a Phase 2 judgment has purportedly been signed by the district court, and the parties have taken appropriate steps for appellate review. Nevertheless, the parties ask the court to review certain, limited provisions of the Amended Facilities Lease and Amended Operating Agreement, yet without a full review of these agreements, as well as the Amended Salt Lease. See La. Civ. Code art. 2053 ("A doubtful provision [in a contract] must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."). Moreover, though not directly at issue in this appeal, it remains unclear whether the Amended Operating Agreement and Amended Facilities Lease are applicable to the OG3 well due to the 1982 Drilling Agreement and whether the OG3 qualifies as an "Excepted Expansion Addition," such that it would fall outside the purview of the clauses and agreements of the Amended Operating Agreement and Amended Facilities Lease.

As noted in a recent decision, this court is aware that the parties to this sinkhole litigation have chosen this particular, multi-phase method to dispose of their

8

remaining claims, and the trial court is attempting to proceed in this case as efficiently as possible. Despite the parties' contentions, this court does not believe that interpreting the parties' multiple interrelated contracts in a disjointed manner, after their interdependence has been established, is efficient or equitable, especially considering the parties' representations to this court that an appeal on the Phase 2 judgment is forthcoming. See **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2022-0738 (La. App. 1st Cir. 12/29/22), ___ So.3d ___, 2022 WL 17983139; see also **Pontchartrain Natural Gas System**, 317 So.3d at 725-26; **Crosstex Energy Services, LP v. Texas Brine Company**, 2022-0782 (La. App. 1st Cir. 2/17/23), ___ So.3d ___, 2023 WL 2055190; **Florida Gas Transmission Company, LLC v. Texas Brine Company, LLC**, 2022-0004 (La. App. 1st Cir. 8/3/22), 348 So.3d 93, writ denied, 2022-01344 (La. 12/20/22), 352 So.3d 85, (addressing how the sole issue of confusion affected four interdependent contracts). Most succinctly stated by Judge Holdridge in his concurrence to **Pontchartrain**, 2022 WL 17983139 at *4, and in support of his finding that the certification of judgment on a motion for partial summary judgment does not satisfy the **Messinger** factors, "[t]his matter has evolved into a lengthy and time-consuming litigation in which millions of dollars of litigation expenses have been expended, as well as countless hours of judicial time and effort, in both the trial and appellate courts."

Given the unresolved and remaining issues from Phase 2, as well as related findings from this court regarding the lack of subject matter jurisdiction concerning limited review of the Amended Operating Agreement, we find that addressing the trial court's granting of Legacy Vulcan's Motion at this juncture is judicially inefficient and promotes piecemeal appellate review. Accordingly, on our *de novo* review of the record, we cannot conclude that there is no just reason for delay, and the designation does not meet the requirements of **Messinger**, *supra*. We therefore dismiss the appeal.

9

## CONCLUSION

For the above reasons, we dismiss Texas Brine's appeal and remand this matter to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed equally between Texas Brine and Legacy Vulcan.

**APPEAL DISMISSED; CASE REMANDED.**[2]

.

---

[2] In light of this appeal and the parties' appearance for oral arguments, this court denies as moot Texas Brine's Motion to Remand Issues Presented by this Appeal and Cancel Oral Argument Due to Improvident Granting of Article 1915(B) Certification.